IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 3, 2003

## STATE OF TENNESSEE v. CHYSEA MYRANDA MARNEY

**Appeal from the Circuit Court for Obion County**
**No. 2-177     William B. Acree, Jr., Judge**

_____

**No. W2002-02648-CCA-R3-CD  - Filed December 31, 2003**

_____

Following an Obion County Circuit Court jury trial, the defendant, Chysea Myranda Marney, was convicted of possession of marijuana with intent to deliver, a Class E felony, Tenn. Code Ann. § 39-17-417(a)(4), (g)(1) (2003), and possession of drug paraphernalia, a Class A misdemeanor, *id.* § 39-17-425(a) (2003). The trial court sentenced her on the felony as a multiple offender to three years in the Department of Correction, and it sentenced her on the misdemeanor to eleven months, 29 days in the county jail.  Now on appeal, the defendant claims that the trial court erred in failing to suppress evidence gained through the execution of a search warrant and that the evidence is insufficient to support the convictions.  We disagree and affirm the lower court's judgments.

**Tenn. R. App. P. 3; Judgments of the Circuit Court are Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

James Powell, Union City, Tennessee, for the Appellant, Chysea Myranda Marney.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Kevin McAlpin, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The defendant moved pretrial to suppress evidence gained by police when they executed a search warrant at the defendant's residence on March 16, 2002.  She based her motion on the claim that the information of a confidential informant, relied upon by the warrant's affiant, failed to establish probable cause for the search and seizure.  The affidavit underlying the warrant was executed by Obion County Deputy Sheriff John McMahan and reflects that the affiant believed that the defendant was in possession of marijuana, cocaine, and drug paraphernalia at her mobile home residence.  The affiant alleged that an informant advised him that the informant purchased marijuana from Kenyatta Reaves at Reaves's and the defendant's mobile home located at 811 West

Reelfoot Avenue, Lot 95, in Union City, on March 15, 2002. The affiant stated that the informant "also advised that he had bought from this same person and place at least one other time in the past." The affiant alleged that the confidential informant "gave a statement against his own interest concerning the sale and purchase of marijuana . . . from Chysea M. Reaves and Kenyatta Reaves" at the mobile home residence. Also, the affiant recounted information supplied by the mobile home park manager that "very heavy traffic [had been] going to the mobile home [at] lot # 95" and by an unidentified neighbor in the mobile home park that "cars would stop and people would go in the mobile home [at lot 95] and stay for a very short amount of time and then leave [and that] this would go on until late into the night."

The trial court conducted a suppression hearing, at the conclusion of which it held that the search warrant was supported by probable cause. Specifically, the trial judge found that the confidential informant had an adequate basis of knowledge of possession of contraband at the defendant's residence and that the informant's veracity was corroborated by independent police investigation, as reflected in the warrant's affidavit.

At trial, Deputy McMahan testified he learned from reviewing the lease of lot 95 that Chysea Marney Reaves and Kenyatta Reaves resided at that location. He testified that Chysea Marney Reaves is the defendant, Chysea Myranda Marney. On March 16, 2002, at approximately 7:00 p.m., Deputy McMahan and other officers executed a search warrant at the residence, and when the officers knocked on the door and announced their presence, they heard the occupants "running around the back of the trailer." The officers pried open the front door, entered, encountered a young man and the defendant inside the residence, and detained "Mr. Reaves"[1] when he was found near the rear door. The officers obtained a "bag of marijuana" that had been thrown out the rear door. The officers searched the residence and in the front bedroom found two sets of scales and a plastic bag containing a green leafy substance. In the bathroom, the officers found another plastic bag containing a green leafy substance. In the back bedroom, they found a pack of cigarette rolling papers and a plastic bag containing a green leafy substance. In the living room, they found another pack of rolling papers and five white pills. Green leafy material was floating in the commode, and the officers found a box of "baggies that matched the bags that some of the marijuana was in." The officers confiscated $99.50 in cash from the defendant's person.

Deputy McMahan testified without objection that all of the green leafy substance seized during the search was later tested and proved to be marijuana. On cross-examination, Deputy McMahan testified that the total amount of marijuana seized weighed "just over 160 grams . . . [or] about 6 ounces."

Deputy McMahan admitted that the third person found in the mobile home initially told officers that the contraband belonged to him; the man then contradicted this statement, and the officers determined that he did not reside at the mobile home, that he had come to borrow gas

---

[1] "Mr. Reaves" apparently refers to the co-defendant, Rhynia Devansman Reaves.

money, and that he had only been there a short time. The man was not charged, and Deputy McMahan did not recall the man's name.

Mark Dunlap, a forensic scientist with the Tennessee Bureau of Investigation, testified that he received and analyzed the green leafy material submitted by Deputy McMahan. He identified the material as marijuana, a Schedule VI controlled substance.

Todd Wright, an officer with the Union City Police Department, testified that he participated in the March 16, 2002 search of the Marney-Reaves residence. He and another officer were covering the back door while Deputy McMahan and others knocked on the front door. The back door opened and "a big bag of dope comes by and nearly hits us in the head . . . . Ms. Marney looks at us like, 'Oh, no,' slams the door and goes back in and locks the door behind her." Officer Wright testified that there was no doubt in his mind that the defendant threw the bag out the door. He was able to open the back door, and when he did so, Rhynia Reaves was walking by the door in the hall.

Officer Shawn Palmer of the Union City Police Department testified that he accompanied Officer Wright in covering the rear door of the Marney-Reaves mobile home. He echoed Officer Wright's testimony about the defendant throwing a bag out the rear door, although he did not see the bag leave the defendant's hand. He testified that Rhynia Reaves was present in the hall when the officers opened the door. On cross-examination, Officer Palmer admitted that Rhynia Reaves, after he was arrested, told Officer Palmer that the drugs did not belong to either him or the defendant but that he was holding them for another person. Officer Palmer also testified that he had previously arrested Rhynia Reaves for a number of misdemeanors, including marijuana possession.

Rhynia Reaves testified for the defense that the marijuana found in the mobile home belonged to him and that the defendant had no knowledge of it. He testified that he opened the back door and threw out the bag of marijuana. He denied that he had been previously convicted of possessing marijuana but admitted that he had been convicted of selling cocaine. He admitted that he possessed the marijuana on March 16, 2002 for the purpose of resale.

The defendant did not testify in her defense.

In her first issue on appeal, the defendant claims that the trial court erred in suppressing the fruits of the March 16, 2002 search of her residence. She argues that the affidavit upon which the search warrant was issued was lacking in probable cause because neither the veracity nor the basis of knowledge of the confidential informant was adequately demonstrated. Specifically, she claims that the affiant's statement that the informant provided information that was against his own interests was insufficient to establish veracity. She argues that the affidavit contained no information from which the magistrate could assess whether the informant's statement was actually against his personal interests, as opposed to being, for instance, self-serving in an attempt to win the prosecution's beneficence in some other charge pending against him. The defendant also argues that

the informant's information was not adequately corroborated by other information in the affidavit. The defendant posits that the affidavit failed to establish a basis of the informant's knowledge because it failed to state whether the informant had ever entered the defendant's residence and failed to show that the informant had seen drugs present in the residence.

When challenged evidence is seized pursuant to a search warrant, the burden rests upon the aggrieved party to prove a constitutional violation by a preponderance of the evidence. *State v. Henning*, 975 S.W.2d 290, 298 (Tenn. 1998). On appellate review of a denial of a motion to suppress evidence, the trial court's decision will be upheld unless the evidence preponderates against that court's findings. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Questions of credibility of witnesses are resolved by the trial court, not the appellate court. *Id.* The party who prevailed in the trial court enjoys on appeal the strongest legitimate view of the evidence and all reasonable, legitimate inferences that may be drawn from the evidence. *Id.* On the other hand, the application of the law to the facts found by the trial court is a question of law that this court reviews *de novo. State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999).

On a constitutional level, the Fourth Amendment to the United States Constitution forbids unreasonable searches and seizures and the issuance of warrants except upon probable cause, "supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Tennessee Constitution also forbids unreasonable searches and seizures, and departing from the language of the federal provision, it proscribes "general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence . . . ." Tenn. Const. art. I, § 7. Of course, the federal provision is applicable to state action. *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684 (1961).

A search warrant is "an order in writing in the name of the state, signed by a magistrate, directed to the sheriff, any constable, or any peace officer of the county, commanding him to search for personal property, and bring it before the magistrate." Tenn. Code Ann. § 40-6-101 (2003). In Tennessee, a finding of probable cause supporting issuance of a search warrant must be based upon evidence included in a written and sworn affidavit. *Id.* § 40-6-104 (2003); Tenn. R. Crim. P. 41(c); *State v. Henning*, 975 S.W.2d 290, 295-96 (Tenn. 1998). The affidavit must set forth "facts upon which a neutral and detached magistrate, reading the affidavit in a common sense and practical manner, can find probable cause." *Henning*, 975 S.W.2d at 294. This requirement of the magistrate's independent judgment means that the affidavit must contain more than merely conclusory allegations by the affiant; "[r]ecital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police." *United States v. Ventresca*, 380 U.S. 102, 108-09, 85 S. Ct. 741, 746 (1965).

Special rules fulfill the need for a detached and neutral review when probable cause is supplied by an informant who is a professional informant drawn from the "criminal milieu." In

such situations, Tennessee requires the application of the two-pronged *Aguilar-Spinelli* test. *State v. Cauley*, 863 S.W.2d 411, 417 (Tenn. 1993); *State v. Jacumin*, 778 S.W.2d 430, 431 (Tenn. 1989); *see Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584 (1969)*; Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509 (1964). The two-prong test must be used to determine (1) the basis of the informant's knowledge and (2) the credibility of the informant or the reliability of the information. *Jacumin*, 778 S.W.2d at 432.

Before addressing the substance of the defendant's claims about the informant who professed to have purchased drugs in the past from the premises occupied by the defendant, we discern that because this informant admitted to purchasing and then possessing illicit drugs, the informant is of the criminal milieu. Accordingly, we analyze the defendant's claims pursuant to the *Aguillar-Spinelli* test, as amplified in *Jacumin.*

First, we address the defendant's attack upon the trial court's determination that the affidavit revealed a basis of the informant's knowledge. She posits that because the affidavit did not establish that the informant went inside the defendant's residence and that the informant saw illicit drugs inside the residence, the basis of the informant's knowledge was inadequate. We disagree. The informant claimed to have purchased drugs *at* the defendant's residence, albeit from the defendant's cotenant. This information indicates a commonsense nexus between illicit drugs and the defendant's residence. *See State v. Moon*, 841 S.W.2d 336, 339 (Tenn. Crim. App. 1992) (employing "a commonsense reading of the affidavit" to discern "a substantial basis for the magistrate to determine that the informant had a sufficient basis of knowledge to state that the marijuana was at the residence"). If the informant purchased drugs from Kenyatta Reaves *at* Reaves's and the defendant's residence, the inference is strong that Reaves possessed the drugs inside the residence, even if the delivery to the informant was made outside. In our view, a basis of knowledge was demonstrated in the affidavit.

We now turn to the second prong. The reliability or veracity of the informant may be suggested when the informant's statement is contrary to his penal interest. In *United States v. Harris*, 403 U.S. 573, 91 S. Ct. 2075 (1971), the Court said,

> Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit . . . statements [against penal interest]. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a "break" does not eliminate the residual risk and opprobrium of having admitted criminal conduct.

-5-

*Id.* at 583-84, 91 S. Ct. at 2082. However, "the content of the informant's admission . . . [must] relate[] to the criminal activity, the targeted premises or the defendant" if it is to carry "weight toward enhancing the reliability of the informant's information." *Moon*, 841 S.W.2d 336, 340.

In the present case, the informant's statement is an admission of criminal conduct which implicates the targeted premises. Based upon *Harris*, we conclude that the statement against penal interest suggests the statement's reliability and the informant's veracity. However, we are reluctant to rely upon the statement being against the informant's penal interest as the sole basis for establishing his veracity for purposes of showing probable cause. We note that in *Harris*, the against-penal-interest factor was merely an "additional reason for crediting the informant's tip." *Harris*, 403 U.S. at 583, 91 S. Ct. at 2082. In *Harris*, the Court also relied upon the affiant's own knowledge, including his knowledge of Harris' reputation, a "'practical consideration of everyday life' upon which an officer (or magistrate) may properly rely in assessing the reliability of an informant's tip." *Id.*, 91 S. Ct. at 2081-82. Moreover, we recognize as a function of common sense that oftentimes an admission of wrongdoing that implicates another person is an effective bargaining tool in gaining prosecutorial dispensation when the informant is caught "red-handed" in some other crime. In such a situation, the informant's statement may not be so much contrary to self interest, as it is promotive of it. Thus, we are inclined, as was the trial court, to determine whether some other information contained in the affidavit lends credence to the informant's tip.

To that end, we note that "independent police corroboration [can] make up deficiencies in either prong" of the *Aguilar-Spinelli* test. *Moon,* 841 S.W.2d at 340.

> [I]t is not necessary that the events observed by the police supply probable cause by themselves or that they point unequivocally in the direction of guilt. It is sufficient that they are "unusual and inviting explanation," though "as consistent with innocent as with criminal activity." Thus, when an untested informant says that he has seen horse race bets taken at a steel plant and then passed through the fence to defendant, police observation of packages being passed to the defendant on several occasions "was sufficient to establish the reliability of the informer in this instance." Similarly, where an informer said narcotics were being sold in a certain record shop and that he had purchased narcotics and seen others there, this was adequately corroborated by a half hour surveillance of the shop resulting in "personal observation of known narcotic addicts entering the premises, speaking with a clerk, going to the rear of the store and then exiting with no apparent purchase."

*Id.* at 341 (quoting Wayne R. LaFave, 1 *Search and Seizure*, § 3.3(f), at 683 (2d ed. 1978 ) (footnotes omitted)).

In the present case, the affidavit included the statements of two citizen informants that heavy traffic frequented the defendant's residence and that the callers, who came until late in the evening, stayed only a short time. *See State v. Melson*, 638 S.W.2d 342, 357 (Tenn. 1982) (when informant is a citizen informant, as opposed to an informant derived from the criminal milieu, the *Aguillar-Spinelli* two-prong test need not be applied; instead, "[e]ach case must be looked at under its own facts, and the existence of probable cause must be reviewed under all the circumstances"). This information, together with the affiant's revelation that his record check confirmed that Kenyatta Reaves had been arrested in October 2001 on two charges of possession of marijuana for resale, serves to corroborate the statement of the informant that he bought drugs from Kenyatta Reaves at the Marney-Reaves mobile home. Thus, we hold that the reliability or veracity prong has been satisfied and that, accordingly, the affidavit of Deputy McMahan established probable cause for the search.

In her other issue, the defendant claims that the evidence is insufficient to support the convictions. Specifically, she claims that the evidence is insufficient to establish that the defendant either actually or constructively possessed the marijuana and to establish the weight of the marijuana seized from the mobile home.

Familiar rules govern the appellate review of a challenge to the sufficiency of the evidence to support a conviction. The reviewing court must determine whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781 (1979); *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Issues of the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and the appellate court does not re-weigh or re-evaluate the evidence. *Id.* Nor may the appellate court substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *Reid*, 91 S.W.3d at 277. A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of establishing why the evidence is insufficient to support the verdict rendered by the jury. *Id.* Conversely, the state on appeal is entitled to the strongest legitimate view of the trial evidence, as well as all reasonable and legitimate inferences which may be drawn therefrom. *Id.*

A person commits a Class E felony who knowingly possesses not less that one-half ounce (14.l75 grams) nor more than ten pounds (4535 grams) of marijuana with intent to manufacture, deliver, or sell. Tenn. Code Ann. § 39-17-417(a)(4), (g)(1) (2003). "It may be inferred from the amount of a controlled substance . . . possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance . . . [was] possessed with the purpose of selling or otherwise dispensing." *Id.* § 39-17-419 (2003). Also, it is a Class A misdemeanor to "use, or to possess with intent to use, drug paraphernalia to . . . inject, ingest, inhale,

or othewise introduce into the human body a controlled substance . . . ." *Id.* §39-17-425(a) (2003).

Tennessee courts recognize that possession may be either actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *see also State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). A person constructively possesses a controlled substance when he or she has "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." *Shaw*, 37 S.W.3d at 903; *Bigsby*, 40 S.W.3d at 90. Said differently, constructive possession is the "ability to reduce an object to actual possession." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient." *Bigsby*, 40 S.W.3d at 90; *see also Cooper*, 736 S.W.2d at 129. "Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." *Cooper*, 736 S.W.2d at 129.

The evidence in the present case is more than sufficient to establish that the defendant constructively possessed the marijuana and drug paraphernalia found in and outside her residence pursuant to the March 16, 2002 search. An offficer testified that the defendant threw a bag of marijuana from the back door of her residence after Deputy McMahan knocked at the front door. A second officer corroborated this testimony by testifying that the defendant was the person standing in the back door when he saw the bag in flight. Not only does this testimony establish the defendant's actual possession of some of the marijuana, it circumstantially establishes her constructive possession of the remainder of the marijuana found inside the residence. Also, marijuana and paraphernalia were discovered throughout the mobile home in two bedrooms, the living room, and a bathroom. We are confident that the evidence established the defendant's constructive possession of the marijuana and the drug paraphernalia.

We now address the defendant's claim that the evidence failed to establish the weight of the marijuana seized from the defendant's residence. Although the defendant is correct that the prosecutor did not ask the Tennessee Bureau of Investigation analyst or any other witness, for that matter how much the marijuana weighed in the aggregate, the defendant, in cross-examining Deputy McMahan during the state's case-in-chief, extracted that the total amount of marijuana seized was about 160 grams or six ounces. Furthermore, in the defendant's case-in-chief, he extracted the same information from his own witness, Rhynia Reaves. We need not belabor the point; the evidence contains testimony that establishes the amount of marijuana by weight.

Finding no merit to the defendant's claims, we affirm the convictions.

_____
JAMES CURWOOD WITT, JR., JUDGE

-8-