IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 18, 2003 Session

## STATE OF TENNESSEE v. HAROLD GARLAND MABRY, JR.

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2000-D-2024     J. Randall Wyatt, Jr., Judge**

_____

**No. M2002-01867-CCA-R3-CD - Filed May 13, 2004**

_____

The appellant, Harold Garland Mabry, Jr., pled guilty in the Davidson County Criminal Court to possession of .5 grams or more of cocaine and possession of a firearm during a felony. Pursuant to the plea agreement, the appellant received a total effective sentence of eight years incarceration in the Tennessee Department of Correction. As a condition of his plea, the appellant reserved a certified question of law concerning the validity of the search warrant underlying the search of his residence. Upon our review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J, and THOMAS T. WOODALL, J., joined.

David Vincent (at trial) and C. Edward Fowlkes (at trial and on appeal), Nashville, Tennessee, for the appellant, Harold Garland Mabry, Jr.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Senior Counsel; Victor S. Johnson, III, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On March 12, 2000, police, acting pursuant to a search warrant, conducted a search of the appellant's residence. Based upon the results of the search, the appellant was indicted on charges of possession of .5 grams or more of cocaine with the intent to sell, possession of a firearm during a felony, possession of drug paraphernalia, and conspiracy to possess 26 grams or more of cocaine with the intent to sell. Subsequently, the appellant filed numerous motions to suppress, alleging that the affidavit supporting the search warrant did not contain sufficient probable cause for the issuance

of a search warrant. Upon the trial court's denial of the motions to suppress, the appellant pled guilty to possession of .5 grams or more of cocaine with the intent to sell and possession of a firearm during a felony. The plea agreement specifically provided that the appellant was "[r]eserving certified issue of law on search issue as set forth in motion to suppress [and] further set forth in separate order to be submitted and incorporated into judgments by reference. This issue is dispositive of the case." The plea agreement was filed on May 13, 2002.

On July 3, 2002, the trial court held a sentencing hearing and decided that it needed more time in which to consider the appropriate sentence for the appellant. Accordingly, the trial court advised the parties to return on July 9, 2002, at which time sentence would be imposed. During the July 3 hearing, the following colloquy occurred:

> Defense Counsel: If I may, Your Honor. I have here the judgment of conviction. The rules on the certified question of law requires that it be issued on the judgment. So I'd ask that be Page 2 to the Judgment. Page 1 would be, of course, the –.

> Trial Court: Okay. That's fine. Let's hear the officer first. I've heard this a little bit more than average, but I – but I need to hear everything I need to hear. And I'll be glad to do it.

At the conclusion of the July 3 hearing, the trial court signed a document entitled "Judgment of Conviction." The document stated that the appellant had pled guilty while reserving a certified question of law concerning whether the affidavit underlying the search warrant sufficiently established probable cause. Specifically, the appellant alleged that the affidavit failed to meet the Aguilar-Spinelli test for determining the validity of an informant's tip. He also alleged that the affidavit contained fraudulent omissions and misrepresentations of material fact. The July 3 document provided that "[c]ounsel for the Defense, the State and the Court consent to the Reservation of this certified question of law and that the question is dispositive of the case." Additionally, each party signed the July 3 document. Finally, the July 3 document did not state the offenses of which the appellant was convicted and did not reference the plea agreement.[1]

Subsequently, on July 9, 2002, the trial court sentenced the appellant and signed two standard judgments of conviction. These judgments of conviction did not set forth the reservation of a certified question of law, nor did the judgments specifically incorporate by reference the plea agreement filed on May 13, 2002, or the "Judgment of Conviction" which was filed on July 3, 2002.

---

[1] We note that Rule 32(e) of the Tennessee Rules of Criminal Procedure provides that "[a] judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence. . . . The judgment shall be signed by the judge and entered by the clerk." The July 3, 2002, document did not set forth the appellant's plea, the verdict or findings, or the adjudication and sentence. Therefore, the July 3, 2002, document does not comply with the requirements for a judgment of conviction.

On appeal, the appellant challenges the validity of the search warrant.[2] The State argues that the appellant failed to properly certify the question of law. Before reviewing the appellant's complaint regarding the search warrant, we must first determine whether he properly reserved his certified question of law.

## II. Analysis

### A. Certified Question

Rule 37(b)(2)(i) of the Tennessee Rules of Criminal Procedure provides that an appellant may appeal from any judgment of conviction occurring as a result of a guilty plea if the following requirements are met:

> (A) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by defendant for appellate review;
>
> (B) The question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
>
> (C) The judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and
>
> (D) The judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case.

Additionally, in State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988), our supreme court explicitly provided prerequisites to appellate consideration of a certified question of law under Rule 37(b)(2)(i). The court stated:

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved.

---

[2] The appellant's notice of appeal specifically stated that his appeal stemmed from the July 3, 2002, document.

Id. This court has repeatedly cautioned that "[b]ecause the prerequisites enunciated in Preston are mandatory, failure to properly reserve a certified question of law pursuant to Preston will result in the dismissal of the appeal." State v. Andrea McCraw, No. 03C01-9903-CR-00106, 2000 WL 250146, at *2 (Tenn. Crim. App. at Knoxville, Mar. 7, 2000) (citing State v. Pendergrass, 937 S.W.2d 834, 838 (Tenn. 1996)).

In State v. Danny Harold Ogle, No. E2000-00421-CCA-R3-CD, 2001 WL 38755, at *4 (Tenn. Crim. App. at Knoxville, Jan. 17, 2001), this court expressed concern regarding the inflexible requirements of Preston and its prodigy. Specifically, we stated:

> In many of these cases the state, defendant and trial court have all agreed (as evidenced by the guilty plea transcript) that the question is properly certified, only to have the state correctly argue on appeal that the certification was not in compliance with Preston, requiring dismissal of the appeal. . . . Thus, in spite of everyone's earlier agreement as evidenced by the transcript of the hearing, the parties are left in a quandary and, at the very least, face even more delay.

> Based upon the documented appellate history of guilty pleas with certified questions of law, we observe that it has become more of a trap than serving its intended purpose. In spite of repeated appellate cautions, the dictates of Preston are simply not being met and, according to its history, will not be met. . . . Unfortunately, it appears there is undue prejudice to the state, crime victims, defendants and all involved in these cases because that which has clearly been agreed upon has not been written on the appropriate document at the appropriate time.

Id. At the conclusion of our opinion in Ogle, we urged our supreme court to reexamine the requirements for properly certifying a question of law. Id.

Subsequently, in State v. Armstrong, 126 S.W.3d 908, 912 (Tenn. 2003), our supreme court again considered the Preston/Rule 37 requirements and concluded that substantial compliance with the dictates of Preston was not sufficient to properly certify a question of law. However, Armstrong provided that a trial court could take corrective action prior to the judgment becoming final in order to comply with Preston. Armstrong, 126 S.W.3d at 912.

The instant case comes before us in a slightly different posture than Armstrong. As we noted earlier, on July 3, the trial court, needing more time to deliberate sentencing issues, continued the appellant's sentencing hearing until July 9. Regardless, the trial court entered a "Judgment of Conviction," detailing the terms of the appellant's certified question of law. The transcript of the July 3 hearing reflects that the appellant's counsel specifically requested that the "Judgment of Conviction" be made "Page 2 to the Judgment." On July 9, subsequent to sentencing the appellant,

the trial court signed standardized judgment of conviction forms which failed to mention the certified question of law. Additionally, the "Judgment of Conviction" document signed on July 3 was not attached to the July 9 documents.

This court has previously cautioned that "we must look to the substance of a trial court's 'curative' order, rather than to its label, in determining whether it satisfies the Preston requirements." State v. Paul Anthony Wright, No. W2001-02574-CCA-R3-CD, 2003 WL 1860526, at *6 (Tenn. Crim. App. at Jackson, Apr. 7, 2003). The transcript of the July 3 hearing clearly reflects that counsel was aware of the strict requirements of Preston and specifically requested that the July 3 document be "Page 2 to the Judgment." As in Wright, there is no question that "[t]he better practice . . . would have been for the judgment form[s] to reference the trial court's order certifying the question of law." Id. However, we conclude that the July 3 and July 9 documents, which were filed roughly contemporaneously and contain the agreed decision of the parties, serve to properly certify the appellant's question of law.

## B. Search

The appellant's certified question stems from the trial court's denial of his motion to suppress. In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

### 1. Informant's Tip

The appellant's residence was searched pursuant to a search warrant and contraband was seized. On appeal, the appellant specifically questions whether there was probable cause to support the issuance of the search warrant. Our supreme court has explained that

> [t]he Fourth Amendment to the United States Constitution requires that search warrants issue only "upon probable cause, supported by Oath or affirmation." Article I, Section 7 of the Tennessee Constitution precludes the issuance of warrants except upon "evidence of the fact committed." Therefore, under both the federal and state constitutions, no warrant is to be issued except upon probable cause. Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act.

State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998) (footnote and citations omitted). In this state, "a finding of probable cause supporting issuance of a search warrant must be based upon evidence included in a written and sworn affidavit." Id. Specifically, "[i]n order to establish probable cause, an affidavit must set forth facts from which a reasonable conclusion may be drawn that the contraband will be found in the place to be searched pursuant to the warrant." State v. Norris, 47 S.W.3d 457, 470 (Tenn. Crim. App. 2000). We note that "'affidavits must be looked at and read in a commonsense and practical manner', and . . . the finding of probable cause by the issuing magistrate is entitled to great deference." State v. Bryan, 769 S.W.2d 208, 211 (Tenn. 1989) (quoting State v. Melson, 638 S.W.2d 342, 357 (Tenn. 1982)).

In State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989), our supreme court espoused the two-pronged Aguilar-Spinelli test "as the standard by which probable cause will be measured to see if the issuance of a search warrant is proper under Article I, Section 7 of the Tennessee Constitution." See Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964). Specifically, "hearsay information supplied by a confidential informant can not support a finding of probable cause unless it also contains factual information concerning the informant's basis of knowledge and credibility." Henning, 975 S.W.2d at 294-95 (citing Jacumin, 778 S.W.2d at 432, 436). However, "independent police corroboration of the information provided by the informant may make up deficiencies in either prong." State v. Powell, 53 S.W.3d 258, 263 (Tenn. Crim. App. 2000). The Jacumin court cautioned against applying the Aguilar-Spinelli test in a hypertechnical fashion. See Jacumin, 778 S.W.2d at 436.

This court has explained that "[u]nder the . . . 'basis of knowledge' prong, facts must be revealed which permit the magistrate to determine whether the informant had a basis for his information or claim regarding criminal conduct." State v. Lowe, 949 S.W.2d 300, 304 (Tenn. Crim. App. 1996); see also State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Specifically, "[t]he informant must describe the manner in which he gathered the information, or the informant must describe the criminal activity with great particularity." State v. Steven Woodard, No. 01C01-9503-CR-00066, 1996 WL 76022, at *2 (Tenn. Crim. App. at Nashville, Feb. 23, 1996).

The second prong of the Aguilar-Spinelli test, sometimes referred to as the reliability, veracity, or credibility prong, deals with the truthfulness of the informant. Under this prong, "facts must be revealed which permit the magistrate to determine either the inherent credibility of the informant or the reliability of his information on the particular occasion." Moon, 841 S.W.2d at 338.

Before applying the Aguilar-Spinelli test, we must first examine the contents of the affidavit written in support of the search warrant. The affidavit, which was prepared by Officer John Donegan on March 12, 2000, provided:

> 1. On or about the middle part of February your affiant and other officers began a drug investigation involving Bobby Mangrum. At that time information was supplied by a confidential informant who

stated that he/she could buy cocaine and marijuana from Mr. Mangrum.

2. On or about February 18th, 2000, your affiant met with said individual who then made contact with Mr. Mangrum in regards to making a purchase of cocaine and marijuana. Your affiant supplied said informant with marked vice funds along with being fitted with a recording device and a transmitting device. The C.I. was then searched for any contraband prior to the deal, he/she had none on his/her person. The informant was directed by Mr. Mangrum to come to 2750 Penn Meade Dr. to take delivery of said drugs. Your affiant and other officers assisted in the surveillance of said residence and did follow[] the C.I. to that location and once inside did monitor a conversation between Mr. Mangrum and the C.I. dealing with the cocaine and marijuana. Once the C.I. left that location he was followed a short distance away and was checked for any contraband. Your affiant recovered the drugs that had been discussed by Mr. Mangrum and the C.I. Your affiant turned these drugs into the metro police property room where they were sent to the T.B.I. lab for analysis.

3. On 3-11-00 your affiant again met with the same said C.I. in regards to making a purchase of marijuana from Mr. Mangrum. Mr. Mangrum directed the C.I. to go to 298 Hickory Hollow Terr[ace] and pick one pound of marijuana up from the occupant of the apartment. The C.I. was again fitted with a transmitter and a recording device and searched before going to that address for contraband. Your affiant and other officers maintained constant visual contact with the C.I. until he/she went inside of 298 Hickory Hollow Terrace. During the C.I.'s time inside said location your affiant an[d] other officers monitored the transmitter and heard the transaction of the drugs take place. The C.I. was then followed to a pre determined location where Officer Burchwell recovered approx. one pound of marijuana from him/her.

4. Your affiant and other officers observed three male subjects exit 298 Hickory Hollow Terrace a short time later. These subjects were stopped a short distance away for investigation. It was learned during this stop that one of the passengers was the person who lived at 298 Hickory Hollow Terrace a Mr. Keomuangtai. Officers asked for consent to [search] that location but were refused. Your affiant and other officers then went to that location to secure it until a search warrant could be obtained.

5.  Your affiant obtained a search warrant for 298 Hickory Hollow Terrace and recovered approx. 26 pounds of marijuana from that location. While there the cell phone of Mr. Keomuangtai rang several times. Your affiant identified the caller as being Bobby Mangrum due to the caller I.D. showing the same number that the C.I. had contacted him by. The caller I.D. also registered the call as being "Bobby's cell phone." Officer Burchwell and other officers took Mr. Keomuangtai's cell phone and went to the area of 2750 Penn Meade Dr. and waited for Bobby to call once more. Mr. Mangrum called a short time later and was told that Mr. Keomuangtai had been arrested and that the police were on their way to his house. A short time later a car arrived at 2750 Penn Meade and a male white, later identified as Shane Hurd, went inside the house and returned to the car a short time later. This person was stopped by officers and was found to be in possession of three small packets of cocaine. This subject co-operated with police and stated that Mr. Mangrum had directed him to go to his house and retrieve the cocaine. Officers were told by same said person that Mr. Mangrum was at the Waff[le] House at McGavock Pike and Pennington Bend. Officers then went to the Waff[le] House and place Mr. Mangrum under arrest. After being advised of his rights he was asked for consent to [search] 2750 Penn Meade Dr. but refused.

6.  Mr. Hurd further co-operated with officers in telling them that Mr. Mangrum kept his marijuana at 298 Hickory Hollow Terrace. Mr. Hurd further stated that Mr. Mangrum kept his money at his uncle's house for safe keeping. Mr. Hurd stated that his uncle owned a bar near Harding Place named Slick Willies. Officer Jesse Burchwell went to that location and was able to identify Mr. Mangrum's uncle with the assistance of Mr. Hurd. Officer Burchwell learned that Harold Mabry aka "Bubba" was Bobby's uncle and introduced himself and explained why he was there. Mr. Mabry stated that he would be glad to go with the officers to [h]is home and give consent if they could wait until 3 o'clock when he closed his bar. Officer Burchwell agreed to Mr. Mabry's offer. Prior to this agreement Officer Burchwell had sent officers to maintain surveillance on 808 Reischa Ct. in the event someone attempted to remove anything. Officer Burchwell advised me that at least two people left from the bar and were attempting to gain entry into 808 Reischa Ct. in an apparent attempt to remove contraband or money. At that point officers took those subjects into custody and secured that house.

The search of the appellant's residence was based largely upon the statement by the informant, Hurd, "that Mr. Mangrum kept his money at his uncle's house for safe keeping." There is no mention in the affidavit of Hurd having been a police informant on a prior occasion. Thus, that basis for establishing his credibility is lacking. "Absent a showing of informant credibility, the affidavit must show that the information given by the informant is otherwise reliable." Moon, 841 S.W.2d at 339.

The State argues that Hurd should be deemed credible because he made a statement against penal interest. This court has previously recognized that "admissions of crime *may* carry their own indicia of credibility." Id. at 340 (emphasis added); see also United States v. Harris, 403 U.S. 573, 584, 91 S. Ct. 2075, 2082 (1971). Regardless, this court cautioned that "such a conclusion necessarily requires the statement against penal interest be the one which provides the reason for the search." Moon, 841 S.W.2d at 340. As we noted, the significant statement underlying the need to search the appellant's residence was "that Mr. Mangrum kept his money at his uncle's house for safe keeping." We question whether the statement was against Hurd's penal interest. Regardless, we conclude that we need not decide this issue because the information given by Hurd was sufficiently corroborated by police.

In the instant case, Hurd not only told police that Mangrum kept his money at the appellant's house, he also told police that Mangrum was at a specific Waffle House restaurant at the time that Hurd was detained, Mangrum kept his marijuana at 298 Hickory Hollow Terrace, the appellant was Mangrum's uncle, and the appellant worked at a bar named Slick Willie's. The police proceeded to the named Waffle House restaurant and therein discovered and arrested Mangrum. Additionally, the police had just discovered a large quantity of marijuana at 298 Hickory Hollow Terrace. Further, the police proceeded to Slick Willie's where they encountered the appellant and learned that he was Mangrum's uncle. Thus, the information given by Hurd on this occasion was sufficiently verified by police so that the remainder of his information could be deemed reliable. See State v. Nathan Alex Weaver, No. M2001-00873-CCA-R3-CD, 2003 WL 1877107, at *9 (Tenn. Crim. App. at Nashville, Apr. 15, 2003). Next, we turn to whether the affidavit contained a basis of Hurd's knowledge.

We acknowledge that the affidavit does not specifically identify the source of the information contained in Hurd's statement to police. However, in Spinelli, the Supreme Court explained that

> [i]n the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

393 U.S. at 416, 89 S. Ct. at 589; see also Jacumin, 778 S.W.2d at 432. We conclude that the aforementioned details, which were verified by police and contributed to the appellant's credibility,

were specifically and intimately related to the underlying criminal conduct and indicated Hurd's personal involvement in the criminal enterprise. See United States v. Smith, 182 F.3d 473, 477 (6th Cir. 1999) (stating "the degree of detail contained in a tip may be used to infer whether the informant had a reliable basis for making his statements"). Moreover, the affidavit reflects that police apprehended Hurd in the act of obtaining cocaine on Mangrum's behalf. Therefore, after examining the informant's tip and the affidavit as a whole, we conclude that the issuing magistrate did not abuse its discretion in issuing the search warrant for the appellant's residence, nor did the trial court err in overruling the appellant's motion to suppress.

## 2. False Statements

Finally, the appellant maintains that "[t]he search warrant is invalid because the underlying affidavit contains recklessly made false statements essential to the establishment of probable cause." Specifically, the appellant contends that the misleading statement in the affidavit is the allegation that "at least two people left from the bar and were attempting to gain entry into 808 Reischa Court in an apparent attempt to remove contraband or money. At that point officers took those subjects into custody and secured the house." The appellant complains that one of the foregoing individuals in fact entered the residence and then left, while another individual waited in the vehicle. Additionally, the appellant argues that when the subjects were apprehended, "no contraband or money was found in their possession. . . . This is a fact that should have been included in the affidavit for the issuing magistrate to consider." The appellant further argues that police recklessly left out of the affidavit that one of the subjects informed police that he was at the residence to check on the appellant's son. The appellant reasons that "[w]ithout this premise the State has no basis to support the knowledge prong which is otherwise non-existent."

In State v. Little, 560 S.W.2d 403, 407 (Tenn. 1978), our supreme court held that "there are two circumstances that authorize the impeachment of an affidavit sufficient on its face, (1) a false statement made with intent to deceive the Court, whether material or immaterial to the issue of probable cause, and (2) a false statement, essential to the establishment of probable cause, recklessly made." This court has observed that the same rationale of the Little test extends to material omissions in an affidavit. See State v. Yeomans, 10 S.W.3d 293, 297 (Tenn. Crim. App. 1999). "However, an affidavit omitting potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." Id. The appellant bears the burden of establishing the allegation of perjury or reckless disregard by a preponderance of the evidence. Id.

At the suppression hearing in the instant case, John Edwards and Victor Darryl Greenfield testified that they went to the appellant's house at 12:15 or 12:30 a.m. to "drop money off" for "[t]he kids" to purchase pizza. Edwards went into the house while Greenfield waited in the vehicle. Edwards denied removing anything from the residence.

Detective Burchwell testified that three people left Slick Willie's after police spoke with the appellant. The individuals were Edwards, Greenfield, and Christy Brown. Detective Burchwell

explained that Edwards and Brown attempted to enter the appellant's residence. After the subjects were detained, it was discovered that Brown possessed the keys to the appellant's safe where the contraband was ultimately discovered. Detective Burchwell also related that the babysitter who was staying at the appellant's residence told him that she heard someone come in the house. That person made a telephone call and stated to the person on the other end of the line that he possessed the wrong set of keys, explaining that the key ring did not have a Harley-Davidson emblem. Detective Burchwell noted that Brown's key ring had a Harley-Davidson emblem.

At the conclusion of the suppression hearing, the trial court issued an order denying the appellant's motion to suppress. Therein, the trial court implicitly accredited the testimony of Detective Burchwell. The trial court noted that "[w]hen maintaining surveillance on the 808 Reischa Court residence, police observed at least two (2) people leaving a bar and attempting to gain entry into the 808 Reischa Court residence in an apparent attempt to remove evidence from the house." Thus, it appears that the trial court determined that the contested statement was not false and did not misrepresent the facts. We agree. See State v. Leon Hurd, No. E1999-01341-CCA-R3-CD, 2001 WL 348871, at *6 (Tenn. Crim. App. at Knoxville, Apr. 10, 2001). Moreover, we conclude that the omission of Edwards' alleged reason for being at the residence did not call into question the accuracy of the affidavit. Accordingly, the appellant has failed to impeach the validity of the search warrant.

### III. Conclusion

Based upon the foregoing, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE