**STATE of Tennessee, Appellee,**

v.

**Bobby Glen MOON, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

July 17, 1992.

No Permission to Appeal Applied for to the Supreme Court.

---

Michael J. Flanagan, Nashville, for appellant.

Charles W. Burson, Atty. Gen., and Cyril V. Fraser, Sp. Asst. Atty. Gen., Nashville, Dan Mitchum Alsobrooks, Dist. Atty. Gen., and Robert S. Wilson, Asst. Dist. Atty. Gen., Charlotte, for appellee.

## OPINION

TIPTON, Judge.

The defendant, Bobby Glen Moon, Jr., appeals his convictions for manufacturing marijuana and possession of marijuana. He received concurrent sentences of one year and six months, respectively. The issue on appeal is whether the trial court erroneously denied the defendant's motion to suppress evidence. We hold that the trial court erred.

This case involves consideration of the requirements in Tennessee for establishing probable cause through the use of information obtained from an informant as set out in *State v. Jacumin*, 778 S.W.2d 430 (Tenn. 1989). Also, it highlights the importance our system of justice attaches to the requirements that, in issuing a search warrant, (1) a judicial officer make a neutral and detached determination of the existence of probable cause and (2) such determination be made only upon information placed in an affidavit.

The defendant was convicted upon evidence seized pursuant to a search warrant issued for his residence. The affidavit for the warrant consists of a preprinted form with underlined blank spaces which were completed by the affiant, Dickson County Detective John Patterson. The affiant's material information in the affidavit was obtained from an informant. The pertinent portion of the affidavit, with the added information filled in as underlined, is as follows:

Affiant further says that an informant, whose name he has this date revealed to the official before whom this application is made, has told the affiant that within the last ten days such informant has been *on* premises above described and had personally seen *marijuana* being used and/or distributed, in violation of the law. Affiant further states that such informant is a reliable person who *has given information against his penal [interest] and in this case has given information that affiant has checked and found to be correct.*

The defendant contends that the affidavit fails to establish the reliability of the informant.

Initially, we note that the record in this case reflects that the trial judge's ruling that probable cause existed for the issuing of the search warrant was largely based upon testimony provided by the affiant at the suppression hearing. Without question, the evidence presented at the hearing was more than adequate to show probable cause that criminal activity regarding marijuana was afoot at the defendant's residence. However, this same evidence was not contained in the affidavit submitted to obtain the search warrant. We do not question the reliability of the affiant's testi-

mony, but as a matter of policy the consideration of such evidence is inappropriate and lends itself to the risk of after-the-fact justification for a warrant.

■ Historically, an affidavit has been an indispensable prerequisite to the issuance of a search warrant in Tennessee. T.C.A. § 40–6–103; *State ex rel. Blackburn v. Fox*, 200 Tenn. 227, 292 S.W.2d 21, 23 (1956); *Harvey v. State*, 166 Tenn. 227, 60 S.W.2d 420 (1933). Likewise, the affidavit must set forth on its face facts which establish probable cause before a search warrant may issue. T.C.A. § 40–6–104; Tenn.R.Crim.P. 41(c). Thus, in Tennessee, probable cause to support the issuance of the warrant must appear in the affidavit and judicial review of the existence of probable cause will not include looking to other evidence provided to or known by the issuing magistrate or possessed by the affiant. *State v. Jacumin, supra,* 778 S.W.2d at 432; *Harvey v. State, supra.*

■ Also, central to the obtaining of a search warrant is the requirement that the issuing magistrate make a judicial determination, that is, a neutral and detached judgment, that probable cause is shown. *See State v. Nolan,* 617 S.W.2d 174 (Tenn.Crim. App.1981); *State v. Berry,* 592 S.W.2d 553, 564 (Tenn.1980) (Henry, J., dissenting); *Gallimore v. State,* 173 Tenn. 178, 116 S.W.2d 1001 (1938). This need for the magistrate's independent judgment means that the affidavit must contain more than merely conclusory allegations by the affiant. "Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police." *United States v. Ventresca,* 380 U.S. 102, 108–09, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

■ The need for a magistrate's independent judgment was an underlying basis

for the two-pronged test developed by the United States Supreme Court in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and explained in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) for determining the existence of probable cause under the Fourth Amendment to the United States Constitution when an affidavit is based upon an informant's allegations. Under the first or "basis of knowledge" prong, facts must be revealed which permit the magistrate to determine whether the informant had a basis for his information that a certain person had been, was or would be involved in criminal conduct or that evidence of crime would be found at a certain place. Under the second or "veracity" prong, facts must be revealed which permit the magistrate to determine either the inherent credibility of the informant or the reliability of his information on the particular occasion. *See* Wayne R. LaFave, 1 *Search and Seizure,* § 3.3(a) (2d ed. 1978); Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer,* 25 Mercer L.Rev. 741 (1974).

For almost twenty years, probable cause under the Fourth Amendment could not be found based solely upon an informant's allegations without the two-pronged test being met. However, in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the court abandoned the two-pronged test and adopted a totality of the circumstances test for probable cause, generally. Tennessee did not follow suit. In *State v. Jacumin, supra,* our Supreme Court held that the standard under Article 1, § 7, of the Tennessee Constitution by which probable cause may be established by information from an informant would be the *Aguilar–Spinelli* two-pronged test.[1] 778 S.W.2d at 436.

---

1. Actually, the two-pronged test for probable cause could apply to all search warrants. For example, even if the information in an affidavit stems from the affiant's firsthand knowledge, a magistrate would issue a warrant upon some determination of the basis of knowledge and veracity of the affiant. As a practical matter, though, the reliability of the investigating offi-

cer/affiant may be presumed by a magistrate, as may be the reliability of other investigating officers upon whom the affiant relies. *See e.g., United States v. Ventresca, supra; United States v. Kirk,* 781 F.2d 1498 (11th Cir.1986). Thus, no special showing of reliability is necessary when the information comes from such an officer.

In *Jacumin,* though, the court warned against applying the two-pronged test hypertechnically. 778 S.W.2d at 436. Also, it approved, as it previously had in *State v. Bryan,* 769 S.W.2d 208, 211 (Tenn. 1989), the United States Supreme Court's statement in *Illinois v. Gates, supra,* relative to the duties of magistrates and reviewing courts regarding the determination of probable cause.

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

462 U.S. at 238–39, 103 S.Ct. at 2332. Thus, review of the affidavit in this case begins by measuring its contents under the two-pronged test in a commonsense, nonhypertechnical fashion.

First, the "basis of knowledge" prong is supported in this case by the informant seeing "marijuana being used and/or distributed" at the defendant's residence. The use of "and/or" in the printed form affidavit could bring into question what the informant actually saw, if the form means that the informant said he saw marijuana "used *or* distributed." Law enforcement should be mindful of our Supreme Court's following admonition:

> The use of printed forms has made the procurement of a search warrant the merest formality, considering the fundamental constitutional rights which the search invades. Certainly, this Court can do no less than to require that the few blank spaces be filled in, and other details of the formality be carried out with care and precision.

*Everett v. State,* 182 Tenn. 22, 184 S.W.2d 43, 45 (1944). However, a commonsense reading of the affidavit reflects that it contains a substantial basis for the magistrate to determine that the informant had a sufficient basis of knowledge to state that the marijuana was at the residence.

As to the "veracity" prong, it must come from the affiant's claim that the informant is reliable and "has given information against his penal [interest] and in this case has given information that affiant has checked and found to be correct." As to the affiant's claim that the informant is reliable, *Spinelli* specifically provides that such a conclusory allegation of reliability is insufficient. 393 U.S. at 412, 89 S.Ct. at 587. What must be shown in the affidavit are underlying circumstances from which the *magistrate* can conclude that the informant is credible or his information is reliable.

Ordinarily, the general credibility of an informant has been shown by his having previously given relevant information to law enforcement which has proven to be reliable. Obviously, an informant's "track record" of providing verified information would be relevant in inferring that the informant is a credible person. Including such a history of reliability in an affidavit gives a magistrate information from which he or she may make an independent determination regarding the informant's credibility. *See, e.g., State v. Henry,* 680 S.W.2d 476 (Tenn.Crim.App.1984). However, the affidavit before us makes no claim that the informant has any previous history of providing accurate information to law enforcement. Thus, there is no circumstance provided from which the magistrate could infer that the informant's information was reliable because he was a credible person.

Absent a showing of informant credibility, the affidavit must show that the information given by the informant is otherwise reliable. First, the state contends that the affidavit is sufficient because the informant has given information against his penal interest. Yet the affidavit does not disclose how that statement relates to his credibility or to the reliability of the informant's information. Generally, one could infer that a person who has committed a crime may be less honest or less worthy of

belief than a person who has not committed a crime. Indeed, much criminal conduct and most criminal convictions are recognized to be relevant to, and admissible to attack, a person's credibility as a witness in a trial. *See* Donald F. Paine, *Tennessee Law of Evidence* § 3 (1974 and Supp.1988); Tenn.R.Evid. 608, 609.

The state relies upon the plurality opinion in *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), an illegal liquor case, to support its contention that the statement against penal interest accredited the information.[2] However, the state fails to recognize what would make a statement against penal interest more credible under the *Harris* rationale.

The view which attaches reliability to a voluntary statement against penal interest is based upon an assumption about human behavior. "Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions." *United States v. Harris, supra,* at 583–84, 91 S.Ct. at 2082. Thus, admissions of crime may carry their own indicia of credibility. It is primarily from this springboard that the *Harris* plurality leapt to reach a conclusion that an informant's information is reliable so as to provide probable cause.

However, such a conclusion necessarily requires that the statement against penal interest be the one which provides the reason for the search. As was conceded by the *Harris* plurality, "admissions of crime do not always lend credibility to contemporaneous or later accusations of another." At 583–84, 91 S.Ct. at 2082. In *Harris*, it was the content of the informant's admission which, without more, was held to implicate the targeted property and to furnish probable cause. Thus, even relying upon the *Harris* rationale, absent the affidavit in this case providing how the admission against interest relates to the criminal activity, the targeted premises or the defen-

dant, it carries no weight toward enhancing the reliability of the informant's information.

Second, the state inferentially contends that the investigating officer corroborated the informant's allegations and thereby made them reliable. However, the affidavit does not give any indication of what was corroborated. In *Jacumin*, the court referred to the fact that "independent police corroboration could make up deficiencies in either prong" of the *Aguilar–Spinelli* test. 778 S.W.2d at 436; *see Spinelli v. United States, supra,* 393 U.S. at 414–15, 89 S.Ct. at 588. What may be left open to question in *Jacumin* is what amount of corroboration must be shown in the affidavit to support a determination of reliability.

In *Spinelli*, the question was stated: "Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar*'s tests without independent corroboration?" at 414–15, 89 S.Ct. at 588. The court went on to state that a judicial officer "cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which—even when partially corroborated—is not as reliable as one which passes *Aguilar*'s requirements when standing alone." *Id.* at 416, 89 S.Ct. at 589. In *Spinelli*, the affidavit contained several pages detailing police surveillance and investigation which the government contended corroborated the informant's tip that Spinelli was conducting gambling/bookmaking operations by means of two specified telephone lines. Yet the court did not consider the corroboration sufficient to give rise to probable cause to issue a search warrant for the premises to which the telephone numbers were assigned.

In *Jacumin*, the affidavit contained details of police surveillance which the state contended corroborated two informants who said that the defendant was going to Knoxville to pick up cocaine. The surveillance included seeing the defendant leave

---

**2.** In *Harris,* the informant admitted that he frequented the targeted premises over a long peri- od of time and drank and bought illegal liquor there.

Davidson County, driving in the direction of Knoxville. However, our Supreme Court held that the tips and the corroboration were insufficient to establish probable cause. Also, the Court commented that surveillance of the defendant's residence showed no unusual activity or regular visits by known drug traffickers.

Some jurisdictions have interpreted *Spinelli* as requiring that the independent corroboration must be of incriminating details, not innocent activity. *See State v. Turney*, 134 Ariz. 238, 655 P.2d 358, 361 (Ariz.App. 1982); *Rutledge v. United States*, 392 A.2d 1062, 1066 (D.C.1978). In *Jacumin*, our Supreme Court started its analysis of *Illinois v. Gates, supra*, by referring to Justice White's concurring opinion which stated that the critical issue regarding corroborating information was not whether the observed activities were innocent or suspicious, but whether the "corroboration of the informer's story gave rise to an inference that the informant was credible and that he had obtained the information in a reliable manner." 778 S.W.2d at 434. Also, the court noted Justice White's comment that no matter how reliable an informant might be, there must be some showing of supporting facts and circumstances on the basis of knowledge.

In the context of the need for corroboration relative to the informant's veracity, a statement of the general requirement is contained in *United States v. Bush*, 647 F.2d 357, 363 (3rd Cir.1981):

> It is difficult to define with precision the quantity of corroboration necessary to demonstrate the informant's veracity. Certainly, more than the corroboration of a few minor elements of the story is necessary, especially if those elements involve non-suspect behavior. It is equally certain, though, that the police need not corroborate every detail of an informant's report to establish sufficient evidence of his veracity.

LaFave takes a similar approach regarding the necessary corroboration to satisfy the veracity prong:

> [I]t is not necessary that the events observed by the police supply probable cause by themselves or that they point unequivocally in the direction of guilt. It is sufficient that they are "unusual and inviting explanation," though "as consistent with innocent as with criminal activity." Thus, when an untested informant says that he has seen horse race bets taken at a steel plant and then passed through the fence to defendant, police observation of packages being passed to the defendant on several occasions "was sufficient to establish the reliability of the informer in this instance." Similarly, where an informer said narcotics were being sold in a certain record shop and that he had purchased narcotics and seen others there, this was adequately corroborated by a half hour surveillance of the shop resulting in "personal observation of known narcotic addicts entering the premises, speaking with a clerk, going to the rear of the store and then exiting with no apparent purchase."

Wayne R. LaFave, *supra*, § 3.3(f) at 683 (footnotes omitted).

In any event, it is apparent from all of the cases that the affiant must make sufficient disclosure of the events, activities, or allegations which have been corroborated in order that the magistrate may make a neutral and detached determination that the informant is credible or that his information is reliable. In this case, the state seeks to equate the affidavit with the affidavit upheld in *State v. Baron*, 659 S.W.2d 811 (Tenn.Crim.App.1983), an insurance fraud case. However, in *Baron* this Court was confronted with an affidavit in which the affiant detailed the specifics of the informant's information which police had verified and which were relevant to the criminal activity afoot.

After comparing the detailed corroboration spelled out in other affidavits, such as are contained in *Jacumin, Baron, Ventresca*, and *Spinelli*, to the affidavit in this case, it is obvious that insufficient corroboration exists. To hold otherwise would send a signal to police officers that a simple declaration of police corroboration without disclosing what was verified will achieve that which a detailed statement of

corroboration will not. Such a signal would pay only lip service to the rationale of *Jacumin* that it is the magistrate, not the police officer, who must determine that there are sufficient circumstances to require a search.

We recognize that judicial application of constitutional standards, or any legal standard, in hypertechnical fashion tends to demean our system of justice and to weaken society's confidence in it. Likewise, it tends to frustrate society's need for law enforcement officers to seek judicial assistance and supervision when they desire to use invasive tactics which go to the heart of each citizen's rights to privacy protected by Article 1, § 7 of our State Constitution.

However, sensitivity to the need to refrain from hypertechnical application of search and seizure standards should not result in our ignoring the responsibility placed upon the judiciary by constitutional and statutory mandate to make an independent determination of probable cause, by affidavit, before a warrant may issue. Regardless of what information was actually possessed by the affiant in this case, it was incumbent upon him to include sufficient circumstances in the affidavit to allow the magistrate to determine probable cause under the standard provided by *Jacumin*.

There being no circumstances provided in the affidavit to show either how the informant's statement against interest was connected to the target of the search or what information was corroborated, the affidavit fails to reflect that the informant was credible or that his information was reliable. Therefore, the search warrant was not issued upon probable cause and any evidence obtained as a result of the search pursuant to the warrant should have been suppressed. The convictions are reversed and the case is remanded to the trial court.

WADE and PEAY, JJ., concur.