# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## ATJACKSON
April 9, 2013 Session

## STATE OF TENNESSEE v. ANTHONY WOODS

**Appeal from the Circuit Court for McNairy County**
**No. 2554      J. Weber McCraw, Judge**

**No. W2012-01871-CCA-R3-CD  - Filed July 3, 2013**

A jury convicted the defendant, Anthony Woods, of one count of facilitation of intent to deliver less than 0.5 grams of cocaine, a Class D felony, and one count of simple possession of marijuana, a Class A misdemeanor.  The trial court sentenced the defendant to concurrent sentences of six years for the facilitation conviction and to eleven months and twenty-nine days for the simple possession conviction.  The physical evidence in the case was seized pursuant to a search warrant issued for the home of the defendant's girlfriend and the defendant's teenage daughter.  The defendant's original appeal was dismissed due to an untimely notice of appeal.  *State v. Woods*, No. W2010-01301-CCA-R3-CD, 2012 WL 134243, at *2 (Tenn. Crim. App. Jan. 13, 2012).  The defendant then brought a post-conviction petition, and the post-conviction court granted the defendant this delayed appeal pursuant to Tennessee Code Annotated section 40-30-113(a)(1).  The defendant challenges the sufficiency of the evidence, the trial court's refusal to admit an audio recording or transcript of the preliminary hearing into evidence, and the legality of the search warrant. Because the search warrant failed to adequately establish the credibility of the confidential informant and because the defendant had standing to challenge the warrant, we reverse the defendant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Charges Dismissed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Scottie O. Wilkes, Memphis, Tennessee, for the appellant, Anthony Woods.

Robert E. Cooper, Jr., Attorney General & Reporter; Rachel E. Willis, Senior Counsel; Mike Dunavant, District Attorney General; and Bob Gray, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

### A. Pretrial and Trial Testimony

The defendant was indicted for the possession of ecstasy tablets with intent to sell or deliver, for resisting arrest,[1] for simple possession of marijuana, and for possession of more than 0.5 grams of cocaine with the intent to deliver. Prior to trial, the defendant moved to suppress all the evidence seized pursuant to the search warrant.

At the suppression hearing, Agent Michael Gilbert of the Twenty-Fifth Judicial District Drug Task Force testified that on February 14, 2009, he obtained a warrant to search Tammy Walker's residence based on a report by a confidential informant that she had been inside the residence in the previous seventy-two hours and had seen crack cocaine inside the residence. Agent Gilbert had worked with the informant on several cases in a four-year period. Agent Gilbert's affidavit stated that the informant, who was familiar with the appearance of cocaine, told him that Ms. Walker was selling crack cocaine and that the informant had seen her in possession of crack cocaine. The affidavit further recited that "[t]he CI has provided Reliable & Credible information in the past concerning crack cocaine and the trafficking of crack cocaine."

Agent Gilbert took no steps to verify the informant's information. He did not wire the informant or attempt a controlled buy and conceded that the informant might just have harbored some resentment against Ms. Walker. According Agent Gilbert, the police had obtained convictions from prior information provided by this informant, but he did not put this fact into the affidavit. The warrant covered all persons on the premises at the time as well as the residence. Agent Gilbert testified he had participated in a prior search of Ms. Walker's home pursuant to a warrant. He did not know who the informant was for the prior search but denied it was the same informant. He acknowledged that nothing was found during the prior search.

---

[1]The charges for resisting arrest and the charges related to the ecstasy tablets were both dismissed prior to trial. At trial, a witness for the State testified regarding tablets in the defendant's pocket. The defendant moved for a mistrial, but the trial court denied the motion because the testimony had not indicated that the tablets were illegal drugs. The State agreed to elicit testimony that he was not being charged with any offense related to the pills.

Ms. Walker, her daughter, and the defendant were present when the search was conducted. Agent Gilbert testified that Ms. Walker was patted down to the extent feasible with no female officer present. Drugs were found in the kitchen, bedroom, and on the defendant's person. According to Agent Gilbert, the defendant then stated that all the drugs belonged to him.

Agent Gilbert testified that he understood that the defendant "stayed there some, off and on, but mainly stayed in Bolivar." Agent Gilbert found a few of the defendant's clothes in a corner beside the bed, but it appeared that primarily Ms. Walker and her daughter lived there. He found no mail belonging to the defendant, and the 911 service showed that only Ms. Walker lived there. Only one car was at the residence.

The court found that the statement in the warrant noting that the informant's name and other information had been revealed to the judge who issued the warrant was not appropriate and that the magistrate should not have considered information outside the four corners of the affidavit. Nevertheless, the trial court concluded that the defendant lacked standing to challenge the search.

On February 19, 2010, the defendant was tried by a jury. Agent Gilbert testified that a crack user could be distinguished from a dealer because a user would carry smaller quantities (less than seven grams), would have paraphernalia such as a crack pipe, and would not carry much cash. A dealer, on the other hand, might have large amounts of cash in small, worn bills.

Agent Gilbert testified that he obtained a warrant because of a tip from an informant who had seen Ms. Walker sell drugs to the informants companion. In executing the search warrant, officers approached Ms. Walker's home as her teenage daughter was taking out the trash. They walked in the open door. Ms. Walker was not restrained but was patted down. Agent Gilbert testified that they were not able to get a female officer to accompany them in order to search her more thoroughly. Agent Gilbert handcuffed the defendant and searched him, finding $2,053 in his pocket, with the lower denominations appearing worn. The cash was in the defendant's front pocket, and a wallet containing his ID was in his back pocket.

Agent Gilbert testified that the defendant was taken into a bedroom and strip searched. In the bedroom, Agent Gilbert recovered marijuana from a jacket pocket and what appeared to be powder or crack cocaine from another jacket. Agent Holley, another officer, recovered marijuana and a pill bottle containing what appeared to be crack cocaine from the kitchen.

After the defendant had been searched and while his hands were handcuffed in front of him, the defendant lunged at evidence lying on a dresser in the bedroom. Agent Gilbert

believed the defendant was about to swallow evidence. To prevent medical harm and destruction of evidence, officers held him and tried to prevent him from swallowing the evidence. Regarding the drugs, the defendant said, "It's all mine. Take me to jail." He did not volunteer an explanation for the money and no paraphernalia for ingesting crack or marijuana were recovered.

Agent Gilbert acknowledged that a rock of crack cocaine might not easily be found during a pat-down. He agreed that the defendant's tank top had one strap stretched as a result of the altercation. He also acknowledged that police used an ink pen to try to remove evidence from the defendant's mouth but denied that his tooth was broken, that his mouth bled, or that he requested medical attention. Nothing was found in his mouth.

During cross-examination, Agent Gilbert also testified that he did not recall his testimony from the preliminary hearing, particularly that the informant had only witnessed the presence, not purchase, of drugs. Defense counsel sought to refresh his memory, but the State objected to the use of counsel's notes rather than a transcript. Defense counsel then cross-examined Officer Gilbert regarding his testimony at the preliminary hearing that: (1) the General Sessions warrant was incorrect in listing Exhibit 3 as crack cocaine when it should have been powder or a white substance; (2) officers, in restraining the defendant, "had to choke him down"; (3) the defendant had broken teeth; and (4) that the confidential informant had merely witnessed the possession, and not the sale, of crack cocaine at the residence. Officer Gilbert did not recall any of his testimony at the preliminary hearing.[2]

Agent Gilbert then testified that only a very small amount of powdered cocaine, 0.4 grams, was found in the jacket pocket, and only a small amount of marijuana was recovered from the other jacket; a small amount of marijuana was also recovered from the kitchen. He acknowledged that a coke can or apple could be used to ingest drugs but did not recall if there were cans at the residence.

Kim Holley, an agent with the Twenty-Fifth Judicial District Drug Task Force,

---

[2]The record shows that Agent Gilbert's testimony at the preliminary hearing was that the informant did not allege that a sale had taken place but just that she saw crack cocaine. Regarding the altercation, Agent Gilbert testified, "we – we started to choke him – or not choke him, but we started to – .... We started to keep him from swallowing the narcotics." He testified that crack cocaine was recovered from the brown jacket in the bedroom, but ultimately changed his testimony to say that the substance in the bag was powdered cocaine and that his arrest warrant was incorrect when it identified it as crack. He then testified that both powder cocaine and crack were found in the pill bottle. He testified that he did not know who the informant was for the prior, unfruitful, search, and that he was not aware the defendant had any teeth broken or loosened.

-4-

participated in the search of Ms. Walker's residence. He testified that Ms. Walker was searched and that he witnessed Agent Gilbert recover the cash from the defendant. Agent Holley testified that in the kitchen he found marijuana and a pill bottle with what he believed to be crack cocaine. Agent Holley heard the altercation in the bedroom and saw that Agent Gilbert had his arm around the defendant's head or neck and Agent Roberts was trying to remove something from his mouth. He did not see blood, he did not remember a broken tooth, and the defendant did not ask for medical treatment. The defendant then claimed ownership of the drugs Agent Holley had found in the kitchen. On cross-examination, Agent Holley testified that in searching the house, he did not find any scales or small bags such as dealers typically use to package cocaine. Ms. Walker would not have been patted down but would have been asked, for example, to pull out her pockets. Agent Holley did not recall if he searched her. He acknowledged that Agent Gilbert's hold would be called "detaining, choking" and that he had his arm over the defendant's throat. He also acknowledged he might have said to the defendant, "Everything we found is yours, right?" Agent Holley testified that possession of numerous bills in denominations less than twenty would indicate that drugs were being held for sale. He did not witness excessive force.

Jennifer Sullivan, a forensic scientist with the Tennessee Bureau of Investigation crime laboratory, testified that she tested the evidence submitted by the Selmer Police Department and determined it was 8.5 total grams of marijuana, 0.4 grams of powder cocaine, and 4.2 grams of cocaine base.

The defendant's sole witness was Tammy Walker, who testified that she did not sell cocaine and that no visitors would have observed her selling cocaine. Ms. Walker testified that her fifteen-year-old daughter was playing with a puppy on the porch and her ten-year-old daughter was in the living room when police entered. She testified she was never handcuffed or searched. According to Ms. Walker, the defendant had just borrowed $2,500 from his sister. She testified that the police took him to the bedroom to assault him, that they busted his mouth, and that his shirt was torn and bloody. Ms. Walker testified that she heard a commotion and went to the other side of the kitchen island. The officers in the living room were not concerned because there was no direct view into the bedroom, but Ms. Walker could see what was happening through a floor-length mirror in the bathroom. The defendant was handcuffed and officers were choking him and jabbing a pen down his throat. Ms. Walker took the defendant, whose front teeth had been broken, to the dentist two or three days later, when he was released from jail. Ms. Walker testified that Agent Holley searched the cabinet, left to investigate the disturbance in the bedroom, returned and then "grabbed something, pretended like he found something." She testified he held the object close to him rather than displaying it, as though he were trying to hide it. She was never shown any of the drugs seized at the scene. Ms. Walker testified that the defendant was a personal drug user. She testified she would have seen a pill bottle with cocaine in it if it were in the cabinet and

that she did not see it. Ms. Walker testified that she had acquaintances who held grudges against her for not lending them money she had recently inherited. She testified that the defendant is five feet, seven inches tall and only weighs 130 pounds.

While Ms. Walker did not testify during the motion to suppress, at trial she testified that the defendant lives at her home "[a]ll the time" and "[e]very day," that he is the father of one of her children, and that he supports both children financially. She stated that he was regularly involved with the children's schooling and with family social activities. Ms. Walker told the prosecution that where the testimony of police officers differed from hers, they were lying. She also testified that the defendant did not claim the drugs. Instead, officers asked him, "If we find anything, it's yours, right?" He responded, "Whatever." Ms. Walker stated that she had bills from the dentist, but did not have them with her. She testified that the jail report noted the defendant had loose teeth.

Near the close of the defendant's proof, the State asserted that it would call rebuttal witnesses. The State noted that its witnesses would be "[p]robably Agent Holley and Agent Gilbert again in light of the statements that Ms. Walker made."

The defense stated its intention to introduce the audio recording of the preliminary hearing, which had not been transcribed. The State objected that the recording would confuse the jury and that excerpts would give an incomplete picture of Agent Gilbert's testimony. Asked the legal basis for introducing the audio recording, the defense answered, "It goes to credibility" and elaborated it would be a prior inconsistent statement. The trial court asked the parties to research the admissibility of the hearing testimony, and the trial resumed the following Monday. The defense obtained a transcript over the weekend, but trial court ruled that the transcript was not admissible as extrinsic evidence, although it could be used, through cross-examination, to show a prior inconsistent statement.

After this discussion, the defense discovered that the prosecution had released Agent Gilbert from its subpoena and that he was not present. The defense asked for a fifteen-minute continuance to issue a subpoena. After twenty minutes, the trial court decided to continue the trial without waiting further for Agent Gilbert, and the State proceeded with rebuttal proof.

Lynn Ingle, an officer with the Selmer Police Department, testified that during the search, he remained in the living room with Ms. Walker and her daughter for the entire time. He did not see Ms. Walker patted down. He testified that Ms. Walker got up from the couch once, but only went "half a step" away from it before she was told to sit down.

Ted Rogers, an Agent with the Twenty-Fifth Judicial District Drug Task Force,

testified that, when he investigated an altercation in the bedroom, he saw Agent Gilbert holding the defendant from behind, with an arm around his neck and underneath the other shoulder, and that Agent Gilbert said that the defendant had a large quantity of narcotics in his mouth. Agent Rogers testified that he took a pen and tried to trigger the defendant's gag reflex. The defendant was not handcuffed, did not gag, and had no drugs in his mouth. He was not taken to the hospital. Agent Rogers testified he did not break any teeth and the defendant was not bleeding. He did not recall who searched Ms. Walker.

The defendant was convicted of simple possession of marijuana and of the lesser included offense of facilitation of intent to deliver less than 0.5 grams of cocaine.

## B. Post-Judgment Proceedings

On March 5, 2010, the prosecution filed the judgment sheets with the McNairy County clerk. On March 23, 2010, defense counsel filed an order signed on March 20, 2010 by the trial judge. The order recited the defendant's sentence and further set bond for the defendant. On April 19, 2010 – within thirty days of the order filed by defense counsel, but outside the thirty-day window from the filing of the judgment sheets – the defendant filed a motion for a new trial, alleging that the trial court erred in failing to suppress the evidence, that the trial court erred in refusing to admit the transcript or recording of the preliminary hearing, and that the evidence was insufficient to support the verdict. The State moved to strike the motion as untimely, but, apparently according to local practice, the trial court found that the thirty-day period ran from the filing of the sentencing order, and it heard the motion. The post-conviction record reflects that the motion was denied on May 7, 2010, but defense counsel did not, as requested by the trial court, reduce this judgment to writing or file an order. The defense filed an untimely notice of appeal on June 14, 2010. On appeal, the State challenged the notice of appeal and motion for a new trial as late-filed.

The Court of Criminal Appeals found that both the motion for a new trial and the notice of appeal were not timely filed. *Woods*, 2012 WL 134243, at *2. Because the defense had not asked the appellate court to accept the late filed notice of appeal in the interest of justice, the appeal was dismissed. *Id.*

The defendant then filed a timely post-conviction petition, alleging that trial counsel was ineffective in failing to file a timely motion for a new trial and a timely notice of appeal. The trial court granted the defendant a delayed appeal under Tennessee Code Annotated section 40-30-113(a)(1). Post-conviction counsel drafted the order granting the delayed appeal, which found the defendant was "deprived of the right to an appeal by his trial counsel's failure to timely file a notice of appeal." However, at the hearing the post-conviction court also concluded that "if the Court orders a delayed appeal, which is what I'm

doing, that addresses any timeliness of the motion for new trial or not. I think all that is covered by allowing the delayed appeal."[3] The post-conviction court noted that any other post-conviction claims were still pending.[4]

In his appellate brief, the defendant raises the three issues in the original motion for a new trial: (1) that the trial court erred in denying the motion to suppress; (2) that the trial court erred in refusing to allow defense counsel to introduce the audio recording or transcript of the preliminary hearing; and (3) that the evidence was insufficient to support the verdict.

## II. Analysis
### A. Sufficiency of the Evidence

The defendant contests the sufficiency of the evidence supporting his convictions. An appellate court must set aside a finding of guilt if the evidence at trial was insufficient to support that finding beyond a reasonable doubt. Tenn. R. App. P. 13(e). In reviewing the sufficiency of the evidence, the appellate court does not determine whether it believes the evidence is sufficient to prove guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The court may not re-weigh the evidence or substitute its inferences for those drawn by the trier of fact. *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). Instead, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn from it. *Hall*, 8 S.W.3d at 599. A guilty verdict rendered by the jury and approved by the trial court accredits the testimony of the State's witnesses and resolves all conflicts of evidence in favor of the prosecution's theory. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court does not re-weigh or re-evaluate the evidence." *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). In weighing the sufficiency of the

---

[3]Accordingly, we conclude that the post-conviction court found that trial counsel's failure to file a timely motion for a new trial was both deficient and prejudicial, resulting in the ineffective assistance of counsel, and we proceed to consider both the issues raised in the motion for a new trial and the sufficiency of the evidence, which was not reviewed on appeal due to the failure to file a timely notice of appeal.

[4]We note that "[i]n those situations where an appellant seeks post-conviction relief both in the form of a new trial and a delayed appeal, we believe the better procedure is for the trial court to grant the delayed appeal, when warranted, and dismiss the collateral attack upon the conviction without prejudice." *Gibson v. State*, 7 S.W.3d 47, 50 (Tenn. Crim. App. 1998).

evidence, circumstantial and direct evidence are treated the same, and the State is not required to exclude every reasonable hypothesis other than that of guilt. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). A guilty verdict replaces the presumption of innocence with a presumption of guilt. *Bland*, 958 S.W.2d at 659. On appeal, the defendant bears the burden of showing that the evidence is insufficient. *State v. Franklin*, 308 S.W.3d 799, 825 (Tenn. 2010).

The defendant was convicted of violating Tennessee Code Annotated sections 39-17-417 and -418. The defendant presents no arguments that the State did not prove each element of the two crimes; instead, the defendant argues that, had the jury been allowed to listen to the preliminary hearing, it would have discredited Agent Gilbert and found the defendant not guilty. As the State correctly points out, this challenge to the sufficiency of the evidence, is not, as the defendant characterizes it, "unusual," but simply a restatement of the defendant's claims that the trial court erred in excluding evidence.

Tennessee Code Annotated section 39-17-418(a) provides that, unless prescribed by a doctor, "[i]t is an offense for a person to knowingly possess or casually exchange a controlled substance." A person acts knowingly with respect to the conduct or to circumstances surrounding the conduct "when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). Tennessee Code Annotated section 39-17-417(a)(4) prohibits the possession of a controlled substance "with intent to manufacture, deliver or sell the controlled substance." A person acts intentionally when "it is the person's conscious objective or desire to engage in the conduct or cause the result." T. C. A. § 39-11-302(a). Subsection 39-17-417(c)(2)(A) makes a violation of the section a Class C felony if the substance was cocaine and the amount was less than 0.5 grams. The defendant was convicted of the lesser included offense of facilitation with regard to the violation of Tennessee Code Annotated section 39-17-417(a)(4). "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403(a). "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." T.C.A. § 39-11-419.

Taken in the light most favorable to the State, the proof at trial showed that the police received information that Ms. Walker was selling cocaine. During a search of her residence, police found over $2,000 cash in the defendant's pocket, including many worn bills of smaller denomination. They found 0.4 grams of cocaine in the bedroom, in the pocket of a jacket, and 4.2 grams of crack cocaine in a pill bottle in the kitchen. Officers also found

marijuana in the kitchen and in a jacket pocket, totaling 8 grams. No drug paraphernalia were seized. Police testified that the defendant claimed ownership the drugs. The evidence was sufficient to allow the jury to conclude that the defendant possessed the marijuana and that he was facilitating Ms. Walker's sale of the 0.4 grams of cocaine. *See State v. Nelson*, 275 S.W.3d 851, 866-67 (Tenn. Crim. App. 2008) (concluding evidence was sufficient that drugs were not for personal use when defendant was found with $114, no paraphernalia, and 0.5 grams of cocaine).

## B. Exclusion of Extrinsic Evidence of Prior Inconsistent Statements

The defendant next challenges the trial court's decision to exclude the audio recording of the preliminary hearing and, later, the transcript of the preliminary hearing. During Agent Gilbert's testimony, defense counsel began to explore certain discrepancies between his testimony at trial and his testimony at the preliminary hearing. Defense counsel questioned Agent Gilbert thoroughly regarding his prior testimony but did not at this point seek to introduce the audio recording of the hearing. However, after Ms. Walker's testimony, the defendant sought to call the court clerk to play the audio recording of the preliminary hearing. The trial court, although it had not listened to the recording, expressed reservations regarding the quality of the recording and possible juror confusion. The trial court asked the parties to research the admissibility of the statements. The State represented that it would "probably" call Agents Gilbert and Holley in rebuttal. Over the weekend, the defendant obtained a transcript of the hearing. The trial court apparently ruled, off the record, that the defense could cross-examine Agent Gilbert under Tennessee Rule of Evidence 613, but that the transcript could not be entered into evidence. The State then revealed that it had decided not to call Agent Gilbert in rebuttal and had released him from subpoena. The defense was granted a brief continuance, during which it attempted to contact him, but was ultimately unable to bring him back to the stand.

Although the defendant's argument on appeal is premised primarily on Tennessee Rule of Evidence 804, the defense at trial sought to introduce the hearing as impeachment evidence directed at undermining the credibility of Agent Gilbert and not as substantive evidence. Initially, we conclude that Rule 804 does not apply to the prior testimony of Agent Gilbert, even if the defendant's trial argument is read to seek to introduce the statements of the preliminary hearing for the truth of the matter asserted. While Tennessee Rules of Evidence 801 and 802 prohibit the introduction of out-of-court statements by the declarant offered to prove the truth of the matter asserted, Rules 803 and 804 provide exceptions to the rule against hearsay. Under Rule 804, former testimony of a declarant who is unavailable because the declarant "demonstrates a lack of memory of the subject matter of the declarant's statement" is admissible. Tenn. R. Evid. 804 (a)(3), (b)(1). A preliminary hearing transcript is "precisely the type of former testimony contemplated" under Rule 804(b)(1). *State v. Sims*,

No. E2006-00380-CCA-R3-CD, 2007 WL 486012, at *2 (Tenn. Crim. App. Feb. 15, 2007); *see* Tenn. R. Evid. 804(b)(1), Advisory Comm'n Cmt.

The Rule, however, requires a demonstrated lack of memory "*of the subject matter of the declarant's statement*." Tenn. R. Evid. 804(a)(3) (emphasis added). This "means that the witness should be called to the stand and questioned *about the subject matter covered by the witness's own hearsay statement*." Neil P. Cohen et al., *Tennessee Law of Evidence* § 8.33[5] (2012) (emphasis added) (noting also that "the lack of memory is about the subject matter of the declarant's statement"); *see also State v. Robinson*, No. M2002-02497-CCA-R3-CD, 2003 WL 22663143, at *4 (Tenn. Crim. App. Nov. 05, 2003). Because Agent Gilbert demonstrated no lack of memory regarding the actual events of the search but merely asserted that he did not remember what he had previously testified to, Rule 804 is not implicated.

In its ruling excluding the extrinsic evidence but allowing further questioning, the trial court relied on Tennessee Rule of Evidence 613(b),[5] which states:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless and until the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

The "only requirement" is that the witness must be given an opportunity to explain or deny the statement. *Id.* Advisory Comm'n Cmt. This involves: (1) confronting the witness with the prior statement; (2) allowing the witness to explain or deny the prior statement; and (3) allowing the opposing party to question the witness regarding the prior statement. Neil P. Cohen et al., *Tennessee Law of Evidence* § 6.13 [5][a]. When a witness "unequivocally admits" to the prior statement, extrinsic evidence may not come in. *State v. Martin*, 964 S.W.2d 564, 567 (Tenn. 1998). Extrinsic evidence of a prior inconsistent statement is therefore "contingent upon whether the witness admits or denies having made the prior inconsistent statement." *State v. Martin*, 964 S.W.2d 564, 567 (Tenn. 1998). Extrinsic evidence may come in when a witness lacks memory regarding the prior statement. *State v. Kendricks*, 947 S.W.2d 875, 882 (Tenn. Crim. App. 1996). The evidence may be either the written or the recorded content of the statement, or it may be the testimony of another witness. *State v. Reid*, 164 S.W.3d 286, 313-14 (Tenn. 2005). "Rule 613(b) does not

---

[5]As the State conceded at trial, the preliminary hearing testimony, if admissible as extrinsic evidence under Tennessee Rule of Evidence 613, appears to also satisfy the hearsay exception outlined in Tennessee Rule of Evidence 803(26).

expressly limit the impeaching party to one form of extrinsic evidence, nor does it require an impeaching party to choose between two available forms of extrinsic evidence." *Id.* at 314.

"[I]t is well-established that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of discretion." *State v. Stinnett*, 958 S.W.2d 329, 331 (Tenn. 1997). Moreover, any error in excluding evidence under Rule 613 is subject to harmless error analysis. *Reid*, 164 S.W.3d at 314; *Martin*, 964 S.W.2d at 568. A judgment shall not be set aside unless, considering the whole record, "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b); *see State v. Rodriguez*, 254 S.W.3d 361, 371-72 (Tenn. 2008).

Here, defense counsel properly confronted Agent Gilbert with his prior statements and gave him an opportunity to admit or deny them. When Agent Gilbert did not remember making the statements, the mandates of Rule 613 had been satisfied. The Rule does not require transcripts as opposed to an audio recording.[6] Thus, the inconsistent testimony from the preliminary hearing should have been admissible as extrinsic evidence.[7]

We nevertheless conclude that any error did not more probably than not affect the judgment. The defendant vigorously cross-examined Agent Gilbert regarding his prior testimony. Agent Holley acknowledged that Agent Gilbert used a "choking" hold, and the defendant challenged Agent Gilbert's credibility through Ms. Walker's testimony. Moreover, Agent Gilbert's trial testimony with regard to facts establishing the elements of the offenses at issue was generally consistent with his preliminary hearing testimony. We conclude that the credibility of Agent Gilbert was adequately explored at trial, and that the failure to include extrinsic evidence of prior inconsistent statements did not more probably than not affect the judgment. *See Reid*, 164 S.W.3d at 314.

Insofar as the defendant objects to the fact that Agent Gilbert was not recalled to the stand, he presents no legal argument as to why he should have been allowed a second chance to cross-examine Agent Gilbert, and gives no insight into what additional evidence could have been elicited on a second cross-examination. This issue is accordingly waived. *See*

---

[6]We note that the trial court could properly have excluded the audio recording based on a finding that poor quality rendered them confusing to the jury. However, the trial court did not listen to the recordings or make such a finding but instead based its conclusion on the premise that a written transcript was required.

[7]Only those portions of Agent Gilbert's prior statements which were inconsistent with his trial testimony would be admissible under Rule 613. *State v. Ackerman*, No. M2010-01979-CCA-R3-CD, 2012 WL 2870568, at *16 (Tenn. Crim. App. July 13, 2012); *State v. Jackson*, No. W2010-01133-CCA-R3-CD, 2012 WL 543047, at *10 (Tenn. Crim. App. Feb. 17, 2012).

Tennessee Court of Criminal Appeals Rule 10(b).

## C. Motion to Suppress

The defendant also challenges the denial of his motion to suppress the evidence seized as the result of the search of Ms. Walker's residence. On appeal, a trial court's findings of fact during a motion to suppress are binding on the appellate court unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial judge. *Id.* The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The trial court's application of law to the facts is reviewed de novo. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000).

### 1. Standing

At the suppression hearing, the prosecution raised the issue of standing prior to the introduction of any proof. The prosecution stated that the defendant did not reside at the house, and defense counsel noted that the defendant indicated he did live there. Nevertheless, the only witness who testified was Agent Gilbert, and he testified for the State. Agent Gilbert testified the defendant "stayed there some, off and on, but mainly stayed in Bolivar," that the defendant kept some clothing "in the corner next to the bed," that there was only one car at the home, and that he found no mail addressed to the defendant. At the close of the proof, the prosecution noted that "[i]f the Court finds, however, that Mr. Woods' person should not have been searched," then the evidence recovered from the home would be admissible, whereas the evidence recovered from his person would not. The trial court found that it was improper for the magistrate to consider information outside the four corners of the documents in the warrant. Nevertheless it concluded that the defendant lacked standing[8] to challenge the search. While the charges related to the ecstasy pills recovered from the defendant's person were subsequently dismissed, officers testified regarding the cash seized from the defendant's pocket.

The Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. These rights are personal in nature. *State v. Cothran,* 115 S.W.3d 513, 520 (Tenn. Crim. App. 2003).

---

[8]Although the defendant does not reiterate the argument he advanced at the hearing that claiming a possessory interest in the drugs gave him standing, we nevertheless note that such an argument would fail because possession of a seized object is no "substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." *United States v. Salvucci*, 448 U.S. 83, 92 (1980).

Accordingly, the Fourth Amendment prohibition against unreasonable searches protects those who hold a legitimate expectation of privacy – an expectation that society is prepared to recognize as reasonable – in the place which is searched. *Minnesota v. Olson*, 495 U.S. 91, 95-96 (1990). The defendant must also establish a subjective expectation of privacy. *State v. Ross*, 49 S.W.3d 833, 840 (Tenn. 2001). Although the letter of the Fourth Amendment extends its protections to people in "their" houses, the United States Supreme Court has "held that in some circumstances a person may have a legitimate expectation of privacy in the house of someone else." *Minnesota v. Carter*, 525 U.S. 83, 89 (1998). "The fact that a person is an overnight guest in a residence or an apartment, standing alone, is sufficient to clothe the guest with a legitimate expectation of privacy in the premises sufficient to challenge the search and any resulting seizure." *State v. Transou*, 928 S.W.2d 949, 958 (Tenn. Crim. App. 1996); *see Olson*, 495 U.S. at 96-97. However, "one who is merely present with the consent of the householder" may not claim the protection of the Fourth Amendment. *Carter*, 525 U.S. at 90. For instance, persons who were not social guests but merely present in the home to conduct a business transaction, had no previous connection to the homeowner, and were only present in the home for some hours, had no standing to challenge an illegal search. *Id.* at 90-91.

A casual visitor or transient party guest does not have a reasonable expectation of privacy in the host's home. *Transou*, 928 S.W.2d 949, 958; *State v. Patterson*, 966 S.W.2d 435, 441 n.5 (Tenn. Crim. App. 1997). However, this Court has noted that the conclusion in *Transou* and *Patterson* that casual guests do not have standing is not absolute. *Cothran*, 115 S.W.3d at 520. Factors that a court should consider in determining whether the accused had a reasonable expectation of privacy in the premises are: (1) property ownership; (2) whether the defendant has a possessory interest in the thing seized; (3) whether the defendant has a possessory interest in the place searched; (4) whether he has a right to exclude others from that place; (5) whether he has exhibited a subjective expectation that the place would remain free from governmental invasion; (6) whether he took normal precautions to maintain his privacy; and (7) whether he was legitimately on the premises. *State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991).

Generally, testimony presented at trial may be considered in reviewing a trial court's ruling on a motion to suppress. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). However, Tennessee Rule of Appellate Procedure 36(a) states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Moreover, courts have declined to look at evidence produced at trial where the defendant did not renew the motion to suppress in light of additional, favorable evidence. 6 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.7(d) (5th ed. 2012); *see U.S. v. Parra*, 2 F.3d 1058, 1065 (10th Cir. 1993) (citing cases holding that,

absent plain error, the court would "not consider trial evidence which undermines a district court decision rendered at a pretrial suppression hearing"). In *State v. Patterson*, when the defendant attempted to cite to trial testimony to support his position that the trial court erred in finding he lacked standing, this Court likewise held that "[b]ecause the motion to suppress was handled prior to trial, evidence adduced at the subsequent trial is irrelevant to our review of the trial court's determination on the motion to suppress." *Patterson*, 966 S.W.2d at 441.

Here, the trial court had no opportunity to make a credibility determination between Ms. Walker's testimony that the defendant lived there and Agent Gilbert's testimony that the defendant lived mainly in Bolivar and kept limited personal effects in the home. It had no opportunity to hear Ms. Walker's testimony that the defendant was an integral and active part of the immediate family unit and father or father-figure to the minor children who lived there. Absent these factual determinations, we review solely the evidence presented at the suppression hearing by the State – the only party who put on proof – in considering whether the evidence preponderates against the trial court's conclusion that the defendant lacked standing.[9]

This Court must determine whether a social guest's ties to the host's home raised a reasonable expectation of privacy in the premises when determining standing to challenge a search. When the guest's ties are attenuated, this Court has denied standing. *See State v. Jeffries*, No. W2011-02653-CCA-R3-CD, 2012 WL 3104404, at *6 -7 (Tenn. Crim. App. July 31, 2012) (appellant who stayed at host's home overnight but had not brought any significant personal items, was only there to avoid law enforcement, and initiated the visit for the purpose of drinking beer and playing cards was a "party" guest rather than an overnight guest and failed to establish a reasonable expectation of privacy); *State v. Cannon*, No. M2010-01553-CCA-R3-CD, 2012 WL 5378088, at *24 -25 (Tenn. Crim. App. Oct. 30, 2012) (defendant who had ownership interest in the property, had a sporadic romantic relationship with the victim, and was attempting to reconcile with the victim, but who lived in separate apartment, had no key, and was barred from contacting victim by an order of protection had no standing); *State v. Heller,* No. W2007-01455-CCA-R3-CD, 2008 WL 2901581, at *8 -9 (Tenn. Crim. App. July 24, 2008) (defendant who had no ownership interest or right to exclude others from commercial property did not have reasonable expectation of privacy); *Kyles v. State*, No. W2004-00374-CCA-R3-PC, 2005 WL 645161, at *5 (Tenn. Crim. App. Mar. 16, 2005) (concluding petitioner, who was "a passing visitor to the residence for the purpose of consuming drugs on the premises," did not have standing); *Patterson*, 966 S.W.2d at 441 (defendants who did not show they were residents or overnight

[9]Of course, had we concluded the defendant lacked standing, *see infra*, the defendant could subsequently to this delayed direct appeal bring a post-conviction action and present proof that trial counsel was ineffective for failing to present evidence at the suppression hearing.

-15-

guests did not have standing as casual visitors); *Transou,* 928 S.W.2d at 957-58 (guest who made no effort to establish reasonable expectation of privacy at suppression hearing and who lived at another address did not have standing).

On the other hand, social guests with a sufficiently close tie to the home searched have been able to challenge the legality of the search of the host's property. *See Robertson v. State*, No. M2007-01378-CCA-R3-PC, 2007 WL 277073, at *15 (Tenn. Crim. App. Feb. 5, 2009) (holding that son who was sleeping on couch and storing belongings at parents' home but had no key was "a regular presence" and had a reasonable expectation of privacy); *State v. Orr*, No. W2001-02075-CCA-R3-CD, 2002 WL 31698697, at *2 -3 (Tenn. Crim. App. Nov. 27, 2002) (appellant who had been staying on property for two or three weeks had standing).

Agent Gilbert testified that the defendant's tie to the residence was that he "stayed" there, alternating between Ms. Walker's home and his main residence in Bolivar, and that the defendant kept some clothing "in the corner next to the bed." We conclude that Agent Gilbert's testimony that the defendant was a regular overnight guest and that the defendant was keeping clothing next to the bed at the time of the search serves to establish a significant enough connection to the household as a social guest that the defendant has established a reasonable expectation of privacy in his host's home. Like the son in *Robertson*, the defendant was a "regular presence" in the household, and as such, has standing to challenge the search warrant.[10]

## 2. Veracity of Confidential Informant

The defendant alleges that the search warrant was not based on probable cause because the affidavit failed to establish the veracity of the confidential informant. Under the *Aguilar-Spinelli* test, when a confidential informant from the criminal milieu provides information which is the basis for the probable cause to issue a search warrant, the affidavit accompanying the warrant must establish: (1) the informant's basis of knowledge and (2) the informant's veracity. *See State v. Jacumin*, 778 S.W.2d 430, 436 (Tenn. 1989). The affidavit may be based on hearsay. *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998).

An informant's past performance in giving reliable information serves to establish veracity. *State v. Moon*, 841 S.W.2d 336, 339 (Tenn. Crim. App. 1992). Because the

---

[10]We note here that, although the trial court did not distinguish between the evidence seized in the home and the cash seized from the defendant's person, "[o]ne does have a reasonable expectation of privacy on his or her person." *Cothran*, 115 S.W.3d at 521. Accordingly, the defendant had standing to challenge the seizure of any items from his person.

magistrate must "make a judicial determination, that is, a neutral and detached judgment, that probable cause is shown," the statements in the affidavit cannot be conclusory but must include the specific underlying circumstances indicating reliability. *Moon*, 841 S.W.2d at 338. The affiant must provide the magistrate with a concrete reason to trust in the informant's credibility. *State v. Sales*, 393 S.W.3d 236, 240 (Tenn. Crim. App. 2012). It is essential that the magistrate have enough information to "make an independent determination regarding the informant's credibility." *Moon*, 841 S.W.2d at 339. Independent police corroboration may make up for a deficiency in either prong. *State v. Powell*, 53 S.W.3d 258, 263 (Tenn. Crim. App. 2000).

"[P]robable cause to support the issuance of the warrant must appear in the affidavit and judicial review of the existence of probable cause will not include looking to other evidence provided to or known by the issuing magistrate or possessed by the affiant." *Moon*, 841 S.W.2d at 338. Accordingly, this Court may not consider the testimony of Agent Gilbert that the informant had given information that led to past convictions or any information which Agent Gilbert gave the magistrate outside the affidavit itself.

The statement in the affidavit that the informant, who was familiar with the appearnce of drugs, had seen cocaine on the premises in the previous seventy-two hours satisfies the basis of knowledge prong of the test. *See Moon*, 841 S.W.2d at 339.

The defendant, however, alleges that the informant's veracity was not established in the affidavit. The Tennessee Supreme Court, in *State v. Valentine*, held that a statement that the informant was "a reputable and reliable person" was conclusory and did not satisfy the veracity prong of the *Aguilar-Spinelli* test. *State v. Valentine*, 911 S.W.2d 328, 330 (Tenn. 1995). Likewise, an assertion that the informant was "believed to be credible and [re]liable" could not, without police corroboration, establish the informant's veracity. *State v. Stevens*, 989 S.W.2d 290, 295 (Tenn. 1999). While "The requisite volume or detail of information needed to establish the informant's credibility is not particularly great," the magistrate must have "specific corroborating information" of the informant's reliability. *State v. Lowe*, 949 S.W.2d 300, 306 (Tenn. Crim. App. 1996).

A statement in an affidavit that the informant's past information has led to convictions is clearly sufficient. *Id.* at 305-06; *State v. Batts*, No. W2006-00419-CCA-R3-CD, 2007 WL 1015444, at *9 (Tenn. Crim. App. Apr. 4, 2007) (the affiant's declaration that the informant had previously provided information resulting in the recovery of illegal narcotics, arrests, and convictions was adequate). So is a statement that the informant's tips have led to the seizure of specific evidence. *Sales*, 393 S.W.3d at 240 -241 (affidavit which stated that informant's tips had led to several drug seizures and arrests was adequate); *Logan v. State*, No. 03C01-9808-CR-00287, 1999 WL 1018187, at *11-12 (Tenn. Crim. App. Nov. 10, 1999)

(statement that the informant had "given the affiant information on at least one occasion that led to the seizure of cocaine," had never given false information, and had corroborated other informants' tips was sufficient to establish veracity); *State v. Snipes*, No. W2004-01619-CCA-R3-CD, 2005 WL 1105187, at *4 (Tenn. Crim. App. May 5, 2005) (statement that past information had led to narcotics arrests and seizure of drugs was sufficient). An arrest only, on the other hand, is not "necessarily indicative of reliability." *Lowe*, 949 S.W.2d at 305 ; *see Henning*, 975 S.W.2d at 295 (statement that informant's reliable past information had led to arrests needed corroboration).

In the case at bar, the affidavit averred that the informant had "provided Reliable & Credible information in the past concerning crack cocaine and the trafficking of crack cocaine." While the statement that described the informant as a "confidential source who has furnished reliable information in the past" was upheld as sufficient in *State v. Bush*, 626 S.W.2d 470, 475-76 (Tenn. Crim. App. 1981), more recent opinions have concluded that "[a]llegations that an informant's prior information was 'valid' or 'correct' [are] conclusory and not indicative of information reliability." *State v. Udzinski*, No. 01C01-9212-CC-00380, 1993 WL 473308, at *3 (Tenn. Crim. App. Nov. 18, 1993). *Compare State v. Wright*, No. 01C01-9510-CC-00326, 1997 WL 13729, at *5 (Tenn. Crim. App. Jan. 16, 1997) (statement that "there has been a previous occasion, or occasions, on which the same informer has given information of violation of law of the state, which information thereafter was found to have been accurate and reliable" was not conclusory) *with State v. Morales*, No. E2001-01768-CCA-R3-CD, 2003 WL 21297308, at *5 (Tenn. Crim. App. June 5, 2003) (statement that "[a]ll information received from this source has all proven to be true through past drug investigations" was conclusory and lacked independent indicia of its validity); *Powell*, 53 S.W.3d at 263 (concluding that statement that the informant had proven to be reliable by providing information about drug trafficking which had been corroborated by independent investigations was "somewhat conclusory" but independent corroboration made up for any deficiency); *Transou*, 928 S.W.2d at 957 (statement that information came from "reliable informant who has proven reliable in the past" was insufficient to establish veracity); *Udzinski*, 1993 WL 473308, at *3 (statement that "informant is a reliable person who has provided information to this officer in the past which has all proven to be correct" was inadequate to show veracity); *State v. Gaw*, No. 01C01-9410-CC-00351, 1995 WL 626616, at *3 (Tenn. Crim. App. Oct. 26, 1995) (affidavit that the informant had provided accurate and reliable information in the past was not sufficient to establish veracity); *State v. Simpson*, No. 02C01-9508-CC-00240, 1996 WL 551796, at *8-9 (Tenn. Crim. App. Sept. 30, 1996) (veracity was not established by a statement that the information came from responsible and reliable citizen who had provided reliable information before).

Our conclusion is that the statement that the informant had previously provided credible and reliable information regarding drug trafficking was simply not specific enough

for the magistrate to make an independent decision regarding the informant's veracity. The magistrate could be nothing other than the proverbial rubber stamp. *See Moon*, 841 S.W.2d at 338. Accordingly, the warrant was not supported by probable cause, and the evidence should have been suppressed.

Constitutional errors that are not structural do not require automatic reversal. "However, the burden on the State to demonstrate that a non-structural constitutional error is harmless remains quite stringent. The existence of a non-structural constitutional error requires reversal unless the State demonstrates beyond a reasonable doubt that the error is harmless." *Rodriguez*, 254 S.W.3d at 371. Because the seizure of the drugs and cash were the entirety the prosecution's case, we cannot conclude that the error was harmless.

## Conclusion

Based on the foregoing reasoning, we conclude the trial court erred in denying the motion to suppress the evidence. Accordingly, the defendant's convictions are reversed and the case is remanded for dismissal of the charges.

_____
JOHN EVERETT WILLIAMS, JUDGE