

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 8, 2016 Session

## STATE OF TENNESSEE v. MARCIA LATRICE TAYLOR

**Appeal from the Circuit Court for Maury County**
**No. 24569      David L. Allen, Judge**

_____

### No. M2016-00934-CCA-R3-CD

_____

A Maury County grand jury indicted the Defendant, Marcia Latrice Taylor, for one count of possession of 0.5 grams or more of a Schedule II substance, cocaine, with the intent to sell or deliver and one count of possession of 14.175 grams of a Schedule VI substance, marijuana, with the intent to sell or deliver. The Defendant filed a motion to suppress the evidence found as a result of a search of an establishment that she owned based upon the credibility and reliability of the confidential informant whose statement police used as a basis for the warrant. The trial court granted the motion, and the State appeals. On appeal, the State contends that the trial court erred because the confidential informant's reliability and knowledge were corroborated by independent police investigation. After review, we reverse the judgment of the trial court and remand the case for proceedings consistent with this opinion.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded; Indictment Reinstated**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

Herbert H. Slatery III, Attorney General and Reporter; Matthew Todd Ridley, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Patrick Powell, Assistant District Attorney General, for the appellant, State of Tennessee.

Jacob J. Hubbell, Columbia, Tennessee, for the appellee, Marcia Latrice Taylor.

## OPINION
### I. Facts

This case arises from evidence seized by the police after they searched the Defendant's place of business. The Defendant filed a motion to suppress the evidence,

contending that the search warrant was defective because it did not establish the knowledge and reliability of the confidential informant. The trial court held a hearing on the motion, during which the parties presented the following evidence: The parties first presented a copy of the search warrant and the supporting affidavit. The record reflects the affidavit in support of the search warrant alleged:

> INVESTIGATOR HUNTER KREADY, COLUMBIA POLICE DEPARTMENT VICE & NARCOTICS UNIT [swears] that there is probable and reasonable cause to believe that, [THE DEFENDANT], JOHN AND/OR JANE DOE, is/are now in possession of certain evidence of a crime . . . .
>
> The Affiant further testifies that said evidence is now located and may be found in possession of said persons or on said premises located in Maury County, Tennessee, and more particularly described as follows: . . . A COMMERCIAL BUSINESS BEING KNOWN AS DIRTY DIRTY LOUNGE . . . THIS IS TO INCLUDE ANY AND ALL VEHICLES AND OUTBUILDINGS THAT ARE ASSOCIATED WITH [THE DEFENDANT] AND THE OCCUPANTS OF [THE LOUNGE].

The affidavit went on to state that Investigator Kready believed the following to be true:

> This affiant has been contacted by a cooperating individual stating that they could purchase cocaine from [the Defendant] at . . . Dirty Dirty Lounge . . . . [The Defendant] and Tiffany Raynell Martin are shown as co-owners of Dirty Dirty Lounge. While researching information of Dirty Dirty Lounge it was discovered a rental agreement dated 02/03/2015 between the property owner Keith Hall with [the Defendant] and Fontaine Bodrogi White showing as the renters. This was discovered in an application for a beer permit at the Dirty Dirty Lounge with the Beer Board of the City of Columbia.
>
> On the first controlled purchase of cocaine the cooperating individual was searched along with the vehicle to be driven by the cooperating individual, for any narcotics, narcotic paraphernalia or currency with none being found. The cooperating individual was then provided with photographed money to purchase the cocaine. The cooperating individual was also provided an electronic listening device. Assisting with the controlled purchase were officers Seagroves, Hardison, Sgt. Ussery and Lt. Shannon.

2

The cooperating individual was followed by this affiant to . . . [the Dirty Dirty Lounge] and monitored through the electronic listening device. This affiant did see the cooperating individual pull onto the lot of [the Dirty Dirty Lounge] and observe other vehicles in the parking lot. While monitoring the listening device this affiant did hear the cooperating individual enter the Dirty Dirty Lounge. While in the Lounge, only music could be heard via the listening device due to the volume of the music being played in the Lounge. The cooperating individual, remained in the Lounge several minutes before hearing the cooperating individual exit and start the cooperating individual's vehicle. The cooperating individual was monitored to a predetermined meeting location. This affiant did recover the purchased cocaine packaged in clear baggie that was twisted at one end and tied at the other end. This affiant also recovered the electronic device that was used in the operation and performed a post buy interview with the cooperating individual. The cooperating individual stated that when they arrived they exited their vehicle and entered the Dirty Dirty Lounge and approached the bar. The cooperating individual state[d] that they spoke with [the Defendant] who was behind the bar, the cooperating individual told [the Defendant] that he wanted one gram of cocaine. The cooperating individual state[d] that [the Defendant] walked to an area near the end of the bar and describe[d] [the Defendant] reaching down under the bar to retrieve the cocaine. The cooperating individual state[d] that [the Defendant] then handed the cooperating individual the clear baggy of cocaine. The cooperating individual then handed [the Defendant] $60.00 dollars US Currency. The cooperating individual state[d] that they then exited the lounge and entered their vehicle and traveled back to the designated meeting location and me[t] this affiant. After returning the cooperating individual and their vehicle were searched for any illegal narcotics, drug paraphernalia or US currency with none being found.

The affidavit went on to state that the substance purchased by the confidential informant field tested positive for cocaine. The affidavit then described a second purchase conducted by the confidential informant. The affidavit described that the officer searched the informant's vehicle before the drug purchase, and, in so doing, found a small amount of cocaine residue on the driver's side floor board of his vehicle. There was not enough residue to send to TBI to be tested and officers found nothing else illegal in the vehicle. The officers gave the informant pre-photographed drug buy money for the cocaine purchase and a listening device. The affidavit then described the buy as follows:

The cooperating individual was followed by this affiant to [the Dirty Dirty Lounge] and monitored through the electronic listening device. This

3

affiant did see the cooperating individual pull into the [parking lot of] the Dirty Dirty Lounge and observe other vehicles in the parking lot. While monitoring the listening device this affiant did hear the cooperating individual enter the Dirty Dirty Lounge. While in the Lounge, only music could be heard via the listening device due to the volume of the music being played in the Lounge. The cooperating individual, remained in the Lounge several minutes before hearing the cooperating individual exit and start the cooperating individual's vehicle. The cooperating individual was monitored to a predetermined meeting location. This affiant did recover the purchased cocaine packaged in clear baggy that was twisted at one end and tied at the other end. This affiant also recovered the electronic device that was used in the operation and performed a post buy interview with the cooperating individual.

The cooperating individual stated that when they arrived at [the Dirty Dirty Lounge] they exited their vehicle and spoke with Fontaine White who was standing in the parking lot then they entered the Dirty Dirty Lounge and approached the bar. The cooperating individual state[d] they made contact with [the Defendant] who was behind the bar. The cooperating individual told [the Defendant] that he wanted one gram of cocaine. The cooperating individual state[d] that [the Defendant] again walked to an area near the end of the bar and describe[d] [the Defendant] reaching down under the bar to retrieve the cocaine. The cooperating individual state[d] that [the Defendant] then handed the cooperating individual the clear baggy of cocaine. The cooperating individual then handed [the Defendant] $60.00 dollars US Currency. The cooperating individual state[d] then they entered their vehicle and traveled back to the designated meeting location and m[et] this affiant. After returning the cooperating individual and their vehicle were searched for any narcotics, drug paraphernalia or US currency with none being found.

The affidavit went on to state that the substance in the baggie again tested positive for cocaine.

The affidavit then described a third drug buy:

On the third controlled purchase of cocaine the cooperating individual arrived at the predetermined meeting location and was searched along with the vehicle to be driven by the cooperating individual, for any narcotics, narcotic paraphernalia or US currency with none been located. The cooperating individual was then provided with photographed money to

4

purchase the cocaine. The cooperating individual was also provided an electronic listening device. Assisting with the controlled purchase were officers Segroves, Sgt. Ussery and Officer Howell.

The cooperating individual was followed by this affiant to 701 East 6th Street and monitored through the electronic listening device. Officer Howell and Sgt. Ussery did observe the cooperating individual pull onto the lot of 701 East 6th Street being the Dirty Dirty Lounge and park on the left hand side of the building.

While monitoring the listening device this affiant did hear the cooperating individual exit their vehicle and enter the Dirty Dirty Lounge. While in the Lounge, due the volume of music no conversation could be heard via the listening device. The cooperating individual, remained in the Lounge several minutes before hearing the cooperating individual exit and start the cooperating individual's vehicle. The cooperating individual was monitored to a predetermined meeting location. This affiant did recover the purchased cocaine packaged in clear baggy that was twisted at one end and tied at the other end. This affiant also recovered the electronic device that was used in the operation and performed a post buy interview with the cooperating individual. The cooperating individuals vehicle and person were searched again for any illegal narcotics, drug paraphernalia and US currency with none being located the electronic listening device was turned off.

The cooperating individual stated that when they arrived at 701 East 6th Street they exited their vehicle and entered the Dirty Dirty Lounge and approached the bar. The cooperating individual states they made contact with [the Defendant] who was behind the bar. The cooperating individual told [the Defendant] that he wanted one gram of cocaine. The cooperating individual states that [the Defendant] walked to an area near the end of the bar and describes [the Defendant] reaching down under the bar to retrieve the cocaine. The cooperating individual states that [the Defendant] then handed the cooperating individual the clear baggy of cocaine. The cooperating individual then handed [the Defendant] $60.00 dollars US Currency. The cooperating individual states then they exited the Lounge entered their vehicle and traveled back to the designated meeting location and meet this affiant. Handing this affiant a clear plastic baggy with cocaine the cooperating individual had just purchased from [the Defendant] at the Dirty Dirty Lounge.

5

The substance field tested positive for cocaine. This third controlled drug buy occurred with 72 hours of the officer seeking a search warrant.

Based upon this affidavit, the trial court issued a search warrant finding that there was probable cause that the Defendant, John and/or Jane Doe, violated the law. The warrant stated:

YOU ARE THEREFORE COMMANDED to make an immediate search on the person or premises of 701 East 6th Street, Columbia, Maury County, Tennessee, and in the premises used and occupied by them located and more particularly described as follows: **701 East 6th Street, Columbia, Maury County, TN 38401 Being a commercial business being known as Dirty Dirty Lounge. This building will be a white concrete block structure with the glass front door being located on the south side of the structure. Numbers 701 located on the upper left corner of the south side of the business. The building is located on the south east corner of East 6th and East End Street. This is to include any and all vehicles and outbuildings that are associated with [the Defendant] and the occupants of 701 East 6th Street, Columbia, Maury County, TN 38401.**

The record evinces that, when officers executed this search warrant, they discovered both cocaine and marijuana inside the Dirty Dirty Lounge. The Maury County grand jury indicted the Defendant for one count of possession with the intent to sell .5 grams or more of cocaine and one count of possession with the intent to sell more than ½ an ounce of marijuana.

On March 15, 2016, the Defendant filed a motion to suppress the evidence found as a result of the search of the Dirty Dirty Lounge. She stated that the search was improperly based upon information given by a confidential informant ("CI") that was not sufficiently corroborated. The motion alleged that the affidavit failed to address the basis of knowledge supporting the informant's reliability and failed to address whether the officers had been able to verify the information supplied by the informant. The motion further stated that the officers could not hear the transactions taking place because of the music in the lounge and had to rely only upon the statements made by the CI, whose credibility was called into question because officers found cocaine in the CI's car before one of the controlled drug buys.

In the memorandum, the Defendant contended that the search warrant was not based upon probable cause because the information supporting the warrant was provided

by a criminal informant.  The *Aguilar-Spinelli* test, the Defendant stated, requires that when a criminal informant provides the basis for probable cause, the affiant must inform the magistrate of (1) the basis for the informant's knowledge, and (2)(a) a basis for establishing the informant's credibility or (2)(b) a basis for establishing that the informant's information is reliable.  The Defendant asserted that the affidavit supporting the search warrant did not meet the *Aguilar-Spinelli* test in either regard.

On April 8, 2016, the trial court held a hearing on the motion to suppress.  At the hearing, the parties presented the search warrant and supporting affidavit.  The Defendant then presented arguments similar to those in her motion.

The State argued that the *Aguilar-Spinelli* test did apply to the confidential informant but that this case was a "hybrid" case in that it also involved officer testimony. The State noted that police can prove corroboration to cure any deficiencies of the *Aguilar-Spinelli* test.  Further, it stated that officers did more corroboration in this case than in many other cases in which the search warrants were found to be valid.  The State presented *State v. Powell*, 53 S.W.3d 258 (Tenn. Crim. App. 2000) as supporting its position.  It noted that, in *Powell*, the police conducted several controlled purchases and the search warrant was held valid.

The State then articulated the facts that it said corroborated the CI's information. It noted that the CI contacted law enforcement officers and said that he could purchase drugs from the Defendant at the Dirty Dirty Lounge.  Law enforcement officers then established that the Defendant was a co-owner of the Dirty Dirty Lounge and that her rental agreement established that she began renting the building in February 2015. Officers examined the Dirty Dirty Lounge's beer permit and determined that the Defendant was listed as an owner of the Lounge.  The officers then followed the CI to the Lounge and conducted a controlled buy.  Police wired the CI with an audio monitor and searched his person and vehicle.  They watched the CI go into and out of the Dirty Dirty Lounge.  The officer noted in the affidavit that the CI told him that he purchased the drugs from the Defendant, naming her specifically.

The State argued that, while police officers did find cocaine residue in the CI's car before the second controlled buy, this only showed that the CI was familiar with cocaine. It further showed that the officers thoroughly searched the vehicle and that they were honest about what they found.  The State noted that the law enforcement officers conducted three controlled buys, that each time the CI said the Defendant sold him drugs, and that each controlled buy was from the same business.

The State further argued that *Aguilar-Spinelli* does not deal with situations involving controlled drug buys, which are sufficient corroboration of a CI's information.

7

Based upon this evidence, the trial court granted the Defendant's motion to suppress. It found:

> [T]he Criminal Informant was someone from the criminal milieu; therefore, the *Aguilar-Spinelli* test must be met. There were no facts within the four corners of the Affidavit establishing the Criminal Informant's basis of knowledge. The Affidavit set forth that the Crimnal Informant stated that he could purchase cocaine from the Defendant, but there were no facts establishing how the Criminal Informant knew that he could purchase cocaine from the Defendant. There were no facts indicating that the Criminal Informant had purchased cocaine from the Defendant in the past. There were no facts stating a timeframe within which the Criminal Informant had purchased cocaine from the Defendant in the past.

The trial court therefore concluded that the affidavit did not satisfy the "basis of knowledge" prong of the *Aguilar-Spinelli* test. The trial court further found that the affidavit failed to establish the Criminal Informant's credibility. The trial court distinguished the facts of this case from the facts in *Powell*, stating that, in *Powell*, the police corroborated the CI's information by successfully monitoring a controlled drug buy. The trial court granted the Defendant's motion to suppress.

It is from this judgment that the State now appeals.

## II. Analysis

On appeal, the State contends that the trial court erred when it granted the Defendant's motion to suppress because law enforcement officers made efforts to corroborate the CI's information. It argues that the trial court's ruling is "hypertechnical" and failed to give the appropriate deference to the magistrate issuing the search warrant. The State asserts that the warrant was supported by probable cause. The Defendant contends that the trial court properly granted the motion to suppress because there was insufficient police corroboration that the information supplied by the CI was reliable.

When this Court reviews a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression

hearing are upheld unless the evidence preponderates against those findings. *See id*. However, the application of the law to the facts found by the trial court is a question of law and is reviewed de novo. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

Under both the Tennessee and United States Constitutions, no search warrant may be issued except upon probable cause, which has been defined as "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998). Tennessee requires a written and sworn affidavit, "containing allegations from which the magistrate can determine whether probable cause exists," as "an indispensable prerequisite to the issuance of a search warrant." *Id*. The affidavit must contain more than mere conclusory allegations on the part of the affiant. *Id*. However, a finding of probable cause made by an issuing magistrate is entitled to great deference. *State v. Yeomans*, 10 S.W.3d 293, 296 (Tenn. Crim. App. 1999) (citing *State v. Melson*, 638 S.W.2d 342, 357 (Tenn. 1982), *cert. denied*, 459 U.S. 1137 (1983)). Therefore, the standard to be employed in reviewing the issuance of a search warrant is "whether, in light of all the evidence available, the magistrate had a substantial basis for finding probable cause." *State v. Meeks*, 876 S.W.2d 121, 124 (Tenn.Crim.App.1993) (citation omitted).

In *State v. Jacumin*, 778 S.W.2d 430, 436 (Tenn. 1989), our Supreme Court adopted the two-pronged *Aguilar-Spinelli* test for determining whether an affidavit that relies upon allegations supplied by a criminal informant is sufficient to establish probable cause. Under the first, "basis of knowledge" prong of the test, "facts must be revealed which permit the magistrate to determine whether the informant had a basis for his information that a certain person had been, was or would be involved in criminal conduct or that evidence of crime would be found at a certain place." *State v. Moon*, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). Under the second, or "veracity" prong of the test, "facts must be revealed which permit the magistrate to determine either the inherent credibility of the informant or the reliability of his information on the particular occasion." *Id.* (citation omitted).

After reviewing the affidavit and the law, we conclude that the trial court erred when it granted the Defendant's motion to suppress the evidence found as a result of the search warrant. The CI stated to police that he could purchase drugs inside the Dirty Dirty Lounge from the Defendant. Law enforcement officers then conducted three controlled drug buys involving the CI. They searched the CI for drugs, gave him money, watched him enter and exit the Dirty Dirty Lounge, searched him again and obtained the drugs he purchased, which field tested positive for cocaine. The CI said that the Defendant reached under the bar to obtain the drugs. This is a sufficient basis to establish

probable cause to apply for a valid search warrant of the Dirty Dirty Lounge, which police did. The search warrant specifically allowed police to search the Lounge and cars parked in the parking lot thereof. The search warrant also restated the CI's information, that it was the Defendant who sold him the drugs inside the Lounge, and we agree that officers could not independently corroborate that fact due to the audio recording. This, however, does not invalidate the search warrant as to the premises of the Dirty Dirty Lounge from which the CI obtained the drugs on three occasions. We conclude that the CI had a sufficient basis of knowledge that he could purchase drugs inside the lounge. He entered the lounge three times, after being searched by law enforcement, and he purchased cocaine on each occasion. He stated that the Defendant reached under the bar to get the cocaine. Further, the CI's "inherent credibility" was not set forth in the affidavit but the circumstances of the controlled drug buys established the "reliability of his information on the particular occasion. *Moon*, 841 S.W.2d at 338. Accordingly, we reverse the trial court's judgment granting the Defendant's motion to suppress.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we reverse the judgment of the trial court, reinstate the indictment, and remand the case for further proceedings consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE

10